196 So.2d 525 (1967)
Jeffery Lee KELLY, Minor by Miss Willie Thompson, Next Friend
v.
Lawrence KING.
No. 44278.
Supreme Court of Mississippi.
March 20, 1967.
*526 Bradford J. Dye, Grenada, William Liston, Winona, for appellants.
F. Kent Stribling, Jackson, for appellee.
INZER, Justice:
This is an appeal from a jury verdict in favor of defendant, Lawrence King, who was sued for the wrongful death of a man for whose death defendant is presently serving a life sentence in the state penitentiary. This verdict must be reversed because of errors in the trial court regarding admissibility of evidence.
Suit originally was brought in the Circuit Court of Montgomery County, under Mississippi Code Annotated section 1453 (Supp. 1964), by Jeffery Lee Kelly, a minor, son of the murdered man, William Lee Kelly. A jury verdict there against King was reversed by this Court, with directions to grant a change of venue and a new trial. King v. Kelly, 243 Miss. 160, 137 So.2d 808 (1962).
This action was moved to the Circuit Court of the First Judicial District of Hinds County. A trial resulted in a jury verdict in favor of King, and a judgment was entered dismissing the suit.
Appellant assigns as error (1) the trial court's exclusion of King's plea of guilty to the charge of murder; (2) the exclusion of admissions made by King to Gwin Cole of the State Highway Safety Patrol; and (3) the failure to exclude testimony offered by Dr. Hernando Woodworth concerning a purported statement by Alex Morris. Morris earlier had pleaded guilty to the murder for which he and King were indicted.

I.
Appellant offered in evidence a certified copy of the judgment of the Circuit Court of Lauderdale County, wherein King had plead guilty to the charge of murdering Kelly. Appellee objected to the introduction on the ground that the plea of *527 guilty was not voluntary, and the trial judge sustained this objection.
This action of the trial court was error. The plea of guilty was admissible as an admission against interest. It is the contention of appellee that his plea of guilty was entered to avoid the hazard of a death sentence and thus was not voluntary.
A plea of guilty in a criminal case is admissible in a civil proceeding. Henry v. Toney, 211 Miss. 93, 50 So.2d 921 (1951); Wagner v. Gibbs, 80 Misc. 53, 31 So. 434 (1902). Appellee's reasons for entering such a plea could then have been explained by him. See Henry v. Toney, supra.
An excellent statement of the rule is found in Race v. Chappell, 304 Ky. 788, 792, 202 S.W.2d 626, 628 (1947), wherein it was stated that:
* * * where the defendant in the criminal case pleaded guilty, and the record showing such plea is offered in evidence in a civil action against him, growing out of the same offense, the judgment is admitted, not as a judgment establishing a fact, but as a declaration or admission against interest that the fact is so. However, the defendant may testify as to the circumstances under which the plea was made and explain the reasons for such plea.

II.
Appellant assigns as error the action of the trial court in sustaining the objection to a question propounded to King relative to a statement that he made to Gwin Cole, special investigator for the Highway Patrol. King was called as an adverse witness, and he denied that he was involved in any way in the killing of Kelly or that he had hired Morris to kill Kelly. King was then asked whether he had had a conversation with Cole in which he stated to Cole that "I hired a Negro to kill William Lee Kelly."
At this point counsel for King requested that the jury retire. He then objected to any further testimony having to do with the conversation with Mr. Cole, for the reason that the alleged statement was in fact a confession which the Circuit Court of Lauderdale County had held was not freely and voluntarily made. The record of the proceedings had in the trial of the criminal case (which ended in mistrial) was not offered in evidence. The trial judge sustained the objection and would not let counsel for appellant pursue the matter any further after the jury returned.
The action of the trial judge in excluding the confession in the criminal case would not be conclusive of this question in this civil case.
Appellant was attempting to lay a predicate upon which later to impeach King. It is the general rule that a confession not shown to have been freely and voluntarily made cannot be used by the prosecution for the purpose of impeachment. Ladner v. State, 231 Miss. 445, 95 So.2d 468 (1957).
Such is the rule in criminal cases, but this is a civil case and must be tried under rules applicable to such cases.
The question to be decided is whether a confession, claimed not to be freely and voluntarily made, is admissible in a civil proceeding as an admission or for impeachment purposes.
We hold that such is admissible, subject to explanation by the party witness as to the circumstances of the alleged confession.
As is stated in 3 Wigmore, Evidence section 815 (3d ed. 1940), at 229-230:
The policy and the history of the rule (against use of involuntary confessions) alike dictate its limitations; so that in civil cases no rule would be looked for which excluded the opposing party's acknowledgment of a debt or other claim because of its extortion by duress. Since admissions are never conclusive, but may *528 always be explained away and discredited by their maker as due to his inadvertence or mistake * * *, there is no necessity for an exclusionary rule based on theory of duress. All analogies suggest that the party's admission be received, subject to his proof of the threats or other circumstances of duress which may have extorted it. It would follow, then, that in a civil case the admissions of an opponent, when offered, are not to be tested or excluded by any rules of confession applicable to the accused in a criminal case.

III.
Appellant assigns as error the admission of the testimony of Dr. Woodworth relative to a statement made by Alex Morris. In the former trial of this case Morris testified that King hired him to kill Kelly. Thereafter Morris died in the hospital at the state penitentiary. Dr. Woodworth, who was in charge of the hospital, was allowed to testify over the objections of appellant that Morris told him shortly before his death that he had lied about Mr. King. By agreement of all parties Morris's prior testimony was introduced and read to the trial jury. In offering Dr. Woodworth's testimony regarding Morris's statement, appellee argues that the testimony was offered only for impeachment purposes to show inconsistent and self-contradictory statements of Morris.
In this state we have consistently followed the rule that in order to impeach the testimony of a witness by showing contradictory statements, a proper predicate must be laid unless waived by failure to object. The question to be decided is whether this rule applies where a witness has died since a former trial, thus making it impossible to lay the proper predicate. This question was considered by the Court en banc with the exception of Justice Rodgers, who took no part in this case.
The leading case on this issue is Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), where it was held that declarations made after a former trial cannot be introduced for impeachment purposes at a later trial without a proper foundation being laid with the questioning of the witness, and that even if the witness is dead, the questioning is considered indispensable.
This is the rule followed in the majority of jurisdictions where this question has been considered.
The strongest condemnation of the rule in Mattox was set forth by the three judges who dissented in that opinion:
To press this rule so far as to exclude all proof of contradictory statements made by the witness since the former trial, in a case where the witness is dead, and the party offering the proof cannot, and never could, cross-examine him as to these statements, is to sacrifice substance of proof to orderliness of procedure, and the rights of the living party to consideration for the deceased witness.
According to the rulings of the court below, the death of the witness deprived the accused of the opportunity of cross-examining him as to his conflicting statements, and the loss of this opportunity of cross-examination deprived the accused of the right to impeach the witness by independent proof of those statements; and thus, while the death of the witness did not deprive the government of the benefit of his testimony against the accused, it did deprive the latter of the right to prove that the testimony of the witness was untrustworthy. By this ruling the court below rejected evidence of a positive character, testified to by witnesses to be produced and examined before the jury, upon a mere conjecture that a deceased witness might, if alive, reiterate his former testimony. (156 U.S. at 260-261, 15 S.Ct. at 346-347, 39 L.Ed. at 417).
*529 Although Mattox is a criminal case, the rule as applied there is applicable to civil suits as well. The majority of the court approved the trial court's refusal to permit the introduction of testimony of witnesses to impeach the testimony of one of the deceased witnesses upon the ground that the proper foundation had not been laid. The court said:
It is insisted, however, that the rule ceases to apply where the witness has died since his testimony was given, and the contradictory statements were either made subsequent to the giving of his testimony, or, if made before, were not known to counsel at the time he was examined; that, if such contradictory statements be not admitted, the party affected by his testimony is practically at the mercy of the witness; that the rule requiring a foundation to be laid is, after all, only a matter of form, and ought not to be enforced where it works a manifest hardship upon the party seeking to impeach the witness. The authorities, however, do not recognize this distinction. (156 U.S. at 246, 15 S.Ct. at 341, 39 L.Ed at 412).
Mattox cites the case of Craft v. Commonwealth, 81 Ky. 250 (1883), which held that:
* * * where the testimony of a witness, given upon a former trial, was reproduced, the witness having died, testimony to the effect that the witness, subsequent to the former trial, stated that the evidence given by him on that trial was false, was not competent. The rule is put upon the ground that, if the impeaching statements were admitted, there would be a strong temptation to the fabrication of testimony, by which important and true evidence might be destroyed. (156 U.S. at 249-250, 15 S.Ct. at 342, 39 L.Ed. at 413).
Noting that the enforcement of the rule might work an occasional hardship, the decision in Mattox emphasized that:
* * * [t]here is quite as much danger of doing injustice to one party by admitting such testimony as to the other by excluding it. The respective advantages and disadvantages of a relaxation of the rule are so problematical that courts have, with great uniformity, refused to recognize the exception. (156 U.S. at 250, 15 S.Ct. at 342-343, 39 L.Ed. at 413).
A majority of this Court is of the opinion that the majority rule is the better rule and the safest one to follow. However, Presiding Justice Gillespie and Justice Jones are of the opinion that the minority rule is the better rule and should be adopted by this Court. We hold that the objection to testimony of Dr. Woodworth concerning the statement of Alex Morris should have been sustained and that the trial court was in error in failing to so hold. The rule is that where testimony given on a former trial by a witness since deceased is properly introduced into evidence, it is incompetent to show that such witness had stated, since the trial, that such testimony was untrue. See Jones, The Law of Evidence in Civil Cases (3d ed. 1924) § 846.
For the reasons stated the judgment of the trial court is reversed and this cause is remanded for a new trial.
Reversed and remanded.
ETHRIDGE, C.J., and BRADY and SMITH, JJ., concur.
JONES, J., concurs in the result.