**FRANKLIN LIFE INSURANCE COM-
PANY, Plaintiff,**

**v.**

**Emma L. STRICKLAND and Anna
J. Jackson, Defendants.**

**No. DC 73–59–K.**

United States District Court,
N. D. Mississippi,
Delta Division.

May 16, 1974.

Allan D. Shackelford, Clarksdale, Miss., for plaintiff.

Orma R. Smith, Jr., Corinth, Miss., for Anna J. Jackson.

William P. Dulaney, Tunica, Miss., for Emma J. Strickland.

## MEMORANDUM ORDER

KEADY, Chief Judge.

The court has before it the cross-motions for summary judgment of Emma L. Strickland and Anna Jean Jackson, opposing claimants of diverse citizenship, to funds paid into court by Franklin Life Insurance Company, as plaintiff in an interpleader action brought under 28 U.S.C. § 1335 and Rule 22, F.R.Civ.P. The interpleaded fund amounts to $20,-458.98.

The essential facts, for present purposes, are as follows: On March 9, 1971, plaintiff issued to Jerry Jackson as insured a life insurance policy, by the terms of which the insured's wife, Anna Jean Jackson, was designated primary beneficiary and his aunt, Emma L. Strickland, was named first contingent beneficiary. At the time of the policy issuance, Jackson was 23 years of age and serving an enlistment in the United States Army. On or about May 29, 1971, the insured, while stationed on the military base at Fort Wainwright, Alaska, was killed by gunshot wound. The wound causing the insured's death was inflicted by Anna Jean Jackson, who was indicted by the grand jury of the United States District Court for the District of Alaska for the federal crime of first-degree murder under 18 U.S.C. § 1111.[1] On August 3, 1972, Anna Jean Jackson entered a plea of not guilty before the federal district court of Alaska. On October 11, 1972, she appeared in court with her counsel, withdrew her previous plea of not guilty, and entered a plea of guilty of the crime of voluntary manslaughter.[2] The court accepted the plea, with the approval of the United States Attorney, to the reduction of the lesser and included charge, convicted her of voluntary manslaughter and sentenced her to a prison term of 4½ years under 18 U.S.C. § 4208(a)(2). At the present time Anna Jean Jackson remains incarcerated under that sentence.

Plaintiff asserts that it is unable to determine with safety to itself the proper payment of the insurance proceeds

---

1. 18 U.S.C. § 1111. Murder

"(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

Any other murder is murder in the second degree.

(b) Within the special maritime and territorial jurisdiction of the United States,

Whoever is guilty of murder in the first degree, shall suffer death unless the jury qualifies its verdict by adding thereto 'without capital punishment', in which event he shall be sentenced to imprisonment for life;

Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life."

2. 18 U.S.C. § 1112. Manslaughter.

"(a) Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

Voluntary—Upon a sudden quarrel or heat of passion.

Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

(b) Within the special maritime and territorial jurisdiction of the United States,

Whoever is guilty of voluntary manslaughter, shall be imprisoned not more than ten years;

Whoever is guilty of involuntary manslaughter, shall be fined not more than $1,000 or imprisoned not more than three years, or both."

and which of the defendants is entitled thereto. Emma L. Strickland, individually and also as administratrix of the insured's estate by decree of the Chancery Court of Tunica County, Mississippi, claims that she is entitled to receive the proceeds since Anna Jean Jackson is disqualified as the primary beneficiary because she killed the insured voluntarily and without legal justification. Emma L. Strickland exhibits the transcript of the federal district court proceedings in Alaska which contains the colloquy between United States District Judge Plummer, Anna Jean Jackson, and her counsel resulting in the acceptance of her guilty plea to the crime of voluntary manslaughter, her conviction and subsequent sentence proceedings. The transcript (p. 6) discloses the following:

> "The Court: Did you in fact on the 29th day of May, 1971, at Fort Wainwright, Alaska, upon a sudden quarrel or in the heat of passion voluntarily shoot your husband with a pistol, that is, Jerry Jackson, and kill him?
>
> A. (by Anna Jean Jackson) Yes."

There ensued a series of questions calculated to assure that her plea of guilty was freely and voluntarily made.

Anna Jean Jackson asserts that, notwithstanding her conviction upon a guilty plea to the crime of voluntary manslaughter, she did not intend to kill the insured, that his death was accidental, and she acted only out of concern for her own safety. Mrs. Jackson has filed in this court an affidavit to the effect that when she fired the weapon she was at home in her residence at a time when her husband was intoxicated and had physically assaulted her, and she was fearful for her safety. She alleges that her husband hollered for his gun when he was downstairs in the house, at which point she, being upstairs, got the gun and proceeded to shoot it. stating:

> "I felt that if I shot the gun (which we kept upstairs) it would keep Jerry from coming upstairs in his drunken state. I felt that if I could keep him away until he sobered up I would be safer. Therefore, I went to the head of the stairs and fired the gun aiming at nothing in particular. Jerry was not anywhere in sight when I pulled the trigger.
>
> "At no time did I intend to shoot Jerry. In fact I did not even see him. If I had seen Jerry I would not have fired the gun, for I did not want to hurt him. I only fired the gun in an effort to keep him from coming up the stairs. At the time I feared for my life and wanted to avoid another beating."

Mrs. Jackson, in her affidavit, makes no reference to her guilty plea to the charge of voluntary manslaughter, nor of the circumstances under which she tendered it to the federal district court of Alaska.

■ The parties do not disagree with basic principles of law recognized in most jurisdictions. For whether the law of Alaska, Mississippi or other jurisdiction should here apply, it is generally settled that the beneficiary of a life insurance policy who intentionally and feloniously takes the life of the assured is precluded from recovering the policy proceeds, but recovery is allowed where the insured's death is caused by the beneficiary unintentionally or not feloniously. See Annotation 27 A.L.R.3rd §§ 3, 6, p. 802 et seq. These principles have been typically applied in Mississippi. In Penn Mutual Life Ins. Co. v. Nunnery, 176 Miss. 197, 167 So. 416 (1936), the wife-beneficiary was allowed to recover upon a finding that she killed the insured in self-defense. In Gholson v. Smith, 210 Miss. 28, 48 So.2d 603 (1950), the wife-beneficiary was denied recovery upon evidence that the insured's slaying was willful and without justification in law, even though the act might be less than murder. Thus, the factual circumstances under which the insured's homicide is committed by the beneficiary control the right of recovery.

■ We are of the view that a person guilty of voluntary manslaughter, as

that crime is defined in the federal statute, has committed a willful and felonious homicide so as to preclude his collection as beneficiary on a life insurance policy on the deceased victim. "Voluntary manslaughter", as it appears in 18 U.S.C. § 1112, has been defined "an unlawful, intentional killing committed without malice aforethought, while in a sudden heat of passion due to adequate provocation." Wakaksan v. United States, 367 F.2d 639 (8 Cir. 1966). Circuit Judge (now Justice) Blackmun, in Beardslee v. United States, 387 F.2d 280, 292 (8 Cir. 1967), declared that "[voluntary] manslaughter requires a finding of killing upon sudden quarrel or heat of passion but does not require either premeditation or malice." It is plain that these essential elements of the crime negate either that the slaying was accidental or unintended or that the slayer acted in self-defense.

The problem in the case sub judice is that the opposing claimants have sought summary judgment in their respective favors by presenting evidentiary materials which raise a factual dispute as to whether Jerry Jackson was voluntarily and feloniously slain by Anna Jean Jackson, as indicated by her plea of guilty and conviction of voluntary manslaughter, or whether Jerry Jackson was shot and killed by Anna Jean Jackson either accidentally or in self-defense. Unless the plea of guilty and conviction are deemed conclusive as to the felonious nature of the homicide, it would obviously be improper for the court to resolve this factual dispute or weigh the evidence in attempting to dispose of the cross-motions for summary judgment. If Anna Jean Jackson is not precluded by her plea of guilty and conviction, there are presented genuine issues of material fact which require plenary trial. Although a plea of guilty in a criminal proceeding and conviction thereon are clearly admissible in evidence, they are ordinarily not conclusive on the pleader and may be explained or rebutted in a subsequent civil case. 31A C.J.S. Evidence § 381. See Henry v. Toney, 211 Miss. 93, 50 So.2d 921 (1951), and Kelly v. King, 196 So.2d 525 (Miss. 1967). A case closely in point on the impropriety of granting summary judgment under analogous circumstances is Davis v. Aetna Life Ins. Co., 279 F.2d 304 (9 Cir. 1960). It follows that Mrs. Jackson's plea of guilty and judgment of conviction, although admissible as a declaration or admission against interest, do not conclusively establish in this civil action that the homicide of Jerry Jackson was willful and felonious, and Anna Jean Jackson may, if she can, explain or rebut her plea of guilty and show what were the real circumstances of the homicide. It will be for the trier of fact in this case to determine the weight and effect to be accorded to her guilty plea and conviction, in the light of a full record made at trial. Should she be able to effectively overcome her plea of guilty and conviction of voluntary manslaughter and establish that the homicide was committed either accidentally or in self-defense, Anna Jean Jackson would be entitled to recover; otherwise, the insurance proceeds will be the property of Emma L. Strickland.

For the foregoing reasons, the court overrules the motion of Emma L. Strickland for summary judgment and slso the motion of Anna Jean Jackson for summary judgment.