THE STATE OF NEW JERSEY, v. SIDNEY SCHLANGER, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided May 6, 1985.

*Walter Krako,* Dep. Atty. Gen. for the State (*Irwin I. Kimmelman,* Atty. Gen., attorney).

*Justin P. Walder* for defendant, Sidney Schlanger (*Walder, Sondak, Berkeley & Brogan,* attorneys).

*Leonard Meyerson* for defendant, Angel Tejero (*Miller, Hochman and Meyerson,* attorneys).

*Anthony J. DeSalvo* for defendant, Mabel Basterrechea.

*Dino D. Bliablias* for defendant, Valentin Diaz (*Stein, Bliablias, McGuire & Pantages,* attorneys).

*William O. Perkins, Jr.* for defendant, Americo Diaz.

*James W. Dougherty* for defendant, Raul E. Garcia.

*Robert Menendez* for defendant, Enrique delaBarca.

*Samuel R. DeLuca* for defendant, Hugo Basterrechea.

*Donald A. DiGioia* for defendant, Charles Longo.

*Robert L. Penza* for defendant, Anthony Lodise.

WOLIN, J.S.C.

This opinion supplements a letter opinion and addresses the "no civil use" provision of *R.* 3:9–2. It examines the considerations to be weighed in permitting a prior guilty plea to be used in pending civil litigation where the monetary aspect of the damages sought is of significant financial consequence. Cognate to this inquiry is the relationship between the concern of a defendant that such plea not be evidential in any subsequent civil proceeding and the desirability to conserve both judicial and prosecutorial resources through disposition of a criminal indictment by plea. The facts of this case are appropriate and timely for judicial consideration of this rule. No local precedent or rule annotation has expressed comment as to its application.

■ For a considerable period of time this Court has been engaged in the case management and disposition of a State Grand Jury Indictment alleging a substantial conspiracy to commit theft by deception from several insurance companies through an array of fraudulent contrivances. *State v. Schlan-*

*ger,* 197 *N.J.Super.* 548 (Law Div.1984). *See* Note 1 of that text. Companion civil actions have been filed and are currently pending in the United States District Court pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO). 18 *U.S.C.* § 1961 *et seq.*[1] With its treble damage penalty RICO poses formidable financial exposure to certain of these defendants far exceeding the $1,000,000 they acquired as the object of the conspiracy. Hence they strongly urge this Court to exercise its discretion in their favor and not permit their prior pleas of guilty to be used in the continuing civil litigation.[2]

*R.* 3:9–2 in its pertinent part provides:

... for good cause shown the court may in accepting a plea of guilty, order that such plea not be evidential in any civil proceeding.

The only reported reference to this rule appears in *Stone v. Keyport Bor. Police Dept.,* 191 *N.J.Super.* 554, 558 (App.Div. 1983), wherein Judge Brody said:

The purpose of the rule is to avoid an unnecessary criminal trial of a defendant who fears that a civil claimant will later use his plea of guilty as a devastating admission of civil liability.

Though this statement is expressive of the purpose of the rule, it did not attempt to construe the phrase "for good cause

---

[1] The purpose of RICO was "to seek the eradication of organized crime in the United States ... by providing enhanced sanctions and new remedies." Pub.L. No. 91–452, 84 Stat. 923. *Also see Cook Cty. v. Lynch,* 560 *F.Supp.* 136, 139 (N.D.Ill.1982). As stated in *United States v. Cappetto,* 502 *F.2d* 1351 (7th Cir.1974), *cert.* den. 420 *U.S.* 925, 95 *S.Ct.* 1121, 43 *L.Ed.2d* 395 (1975). Acts which may be prohibited by Congress may be made subject to both criminal and civil proceedings, and the prosecuting arm of the government may be authorized to elect whether to bring a civil or criminal action, or both. A civil proceeding to enforce these acts is not rendered criminal in character by the fact that the acts are also punishable as crimes. 502 *F.2d* at 1357.

[2] It is important to note that none of the pleas was entered and accepted subject to a rule construction favorable to the defendant. Determination of the issue was reserved to afford counsel the opportunity to brief and argue the application of the rule.

shown" nor determine the moral measure appropriate to the relief sought.[3]

As of this writing substantially all of the defendants have been sentenced to significant prison terms and fines. The rationale employed by the court for its sentence structure focused on deterrence, as well as protection of the public. These sentencing goals were employed to strongly dispel the common perception that white collar offenders are dealt with less harshly than those who commit other types of non-violent crime. Notwithstanding their individual participation in this massive conspiracy and the reasons expressed by the court for imposing their respective sentences, the defendants advance three basic arguments for "no civil use" of their prior pleas. Succinctly stated, they are as follows:

1. The civil plaintiffs are capable of prosecuting and establishing their monetary claims through the normal channels of discovery;
2. Imposition of civil liability would be inappropriate and unfair under the circumstances of this case;
3. To permit the use of a criminal plea in a subsequent civil trial will have a chilling effect on the entry of pleas, especially in those cases where large monetary damages are sought thereby creating the occurrence of unnecessary criminal trials.

This Court regards these arguments as a catalogue of ideas whose currency is of very little value. They represent arguments directed toward avoidance of liability by individuals who seek to insulate themselves from monetary responsibility for criminal acts of theft.

At the very outset it is important to recognize the rule's purposeful inclusion of the "for good cause shown"

---

[3]The "no civil use" provision of the rule first appeared in an amendment to *R.* 3:5–2 effective September 11, 1961. Prior to the amendment the rule permitted pleas of not guilty, guilty, non vult or nolo contendere with attendant confusion as to their plea use in subsequent civil litigation. At the 1961 judicial conference, after careful review of majority and minority opinions, the Supreme Court Committee on Criminal Procedure decided to eliminate the pleas of "non vult" and "nolo contendere" but added to the rule the phrase "no civil use" subject to a "good cause" standard. *See* Report, Supreme Court Committee on Criminal Procedure, 1961 Judicial Conference and proceedings of the Judicial Conference, May 26, 1961.

requirement. Its presence negates the proposition that mere exposure to devastating civil liability *per se* constitutes good cause. Generally, the term "good cause" is interpreted to mean a legally sufficient ground or reason. *Bidwell v. McSorley*, 194 *Va.* 201, 72 *S.E.2d* 245, 249 (1952). Another court termed it a *substantial reason. State v. Estencion*, 63 *Hawaii* 264, 625 *P.2d* 1040, 1042 (1981) (emphasis supplied). The majority of legal precedent, both federal and state, points in this direction. *See Municipality of Anchorage v. Hitachi Cable, Ltd.*, 547 *F.Supp.* 633, 641 (Alaska 1982); *United States v. C.W. Krietemeyer*, 506 *F.Supp.* 289, 292 (S.D.Ill.1980); *Fowler-Barham Ford, Inc. v. Indiana Lumbermans Mutual Ins. Co.*, 45 *N.C.App.* 625, 263 *S.E.2d* 825, 829 (1980); *Ludwig v. Kowal*, 419 *A.2d* 297, 303 (R.I.1980); *Ivers v. United States*, 581 *F.2d* 1362, 1367 (9th Cir.1978); *United States v. Podell*, 572 *F.2d* 31, 35 (2nd Cir.1978); *Brohawn v. Transamerica Ins. Co.*, 276 *MD.* 396, 347 *A.2d* 842, 848 (1975); *Franklin Life Ins. Co. v. Strickland*, 376 *F.Supp.* 280, 283 (N.D.Miss.1974), and *United States v. Levinson*, 369 *F.Supp.* 575, 577 (E.D.Mich.1973). The extent of use through collateral estoppel or by other methods of issue preclusion rests squarely within the discretion of the civil tribunal. *Emich Motors Corp. v. General Motors Corp.*, 340 *U.S.* 558, 71 *S.Ct.* 408, 95 *L.Ed.* 534 (1951). *Also see Parklane Hosiery v. Shore*, 439 *U.S.* 322, 99 *S.Ct.* 645, 58 *L.Ed.2d* 552 (1979) and *U.S. v. Mendoza*, 464 *U.S.* 154, 104 *S.Ct.* 568, 78 *L.Ed.2d* 379.

The State of New Jersey has demonstrated a longstanding commitment to the recognition of victims' rights. All branches of government have participated in this sense of recognition heeding the clarion call of its citizenry for protection. The Client's Security Fund, *R.* 1:28–1 *et seq*, the Violent Crimes Compensation Board, *N.J.S.A.* 52:4B–3 et seq., and the Governor's establishment of a "victims' rights" week with its accompanying seminars reflect the breadth and scope of this commitment. Moreover, the Code of Criminal Justice set forth in Title 2C, is replete with provisions directed toward the concern and

recognition of victims' rights.[4] Thus, as a recent commentator observed, "victims' rights should be greeted with respect rather than derision." 115 *N.J.L.J. Index Page* 529.

The reasons advanced by the proponents of "no civil use" serve to promote their own limited self-interest without concern for their victims. By eliminating the need for unnecessary discovery and relitigation of issues that were the subject of the plea, the cost of litigation is reduced and judicial resources are conserved. The convergence of these policy reasons is consistent with protection of victims' rights and the salutary principles that partake of economy in the cost of court proceedings. The reasons offered for "no civil use" not only fail to rise to the dimension of "for good cause shown" but pale in comparison to the policy reasons that are consonant with "civil use" of the plea.

Critical to this Court's decision in denying defendants' applications of "no civil use" of their respective pleas is the scope and duration of this particular conspiracy. It encompassed 18 defendants, 15 insurance companies and extensive monetary loss over a period of four years. It could hardly be termed an isolated incident. No chilling effect on pleas will result from this determination since the pleas entered were proffered without condition and with full awareness of the penal and financial consequences of their actions.

Economic crime cases, often referred to as "white collar" crime, due to public cynicism receive less attention than other types of crime, yet are no less purposeful and are significantly more damaging than their more sensational counterparts. These crimes are hardly victimless crimes merely because there is no identifiable victim. All citizens who pay some form of casualty premiums are victims. They too are entitled to protec-

---

[4]Sections 2C:43–3(e), 2C:44–1(a)(2), 2C:44–1(b)(6), 2C:44–2(a), 2C:44–6(b) and 2C:45–1(b)(8) are reflective of the code's concern for victims' rights.

tion and their silent voice is heard by this Court. As stated in *Podell, supra:*

> The larger interests of public justice will not tolerate, under any circumstances, that a public official shall retain any profit or advantage which he may realize through the acquirement of an interest in conflict with his fidelity as an agent [of the United States.]

So here too morality, justice and fairness will not permit a procedural advantage to be obtained by those who, through unlawful means for their own selfish gain, compromise an industry so integrally related to the public interest.

While some form of cheating may be pervasive and not an uncommon occurrence in our society, it should be recognized for its destructive tendencies as well as the disservice and disadvantage it causes to all law abiding citizens. Its happening cries for accountability and any procedural obstacle that impedes that cycle of atonement encourages its continuance. A recent law review comment counsels:

> White collar criminal violations should be seen as an attempt to defraud innocent victims ... an injury to the public welfare which needs to be deterred as forcefully as any other type of criminal activity.
>
> In order for deterrence to be effective, there must be certainty and severity of punishment. This does not exist when a defendant can insulate himself from some of the consequences of his behavior by pleading (nolo contendere). In many cases the profit gained through the illegal activity will far outweigh the inconvenience of criminal conviction. If a defendant can lessen the potential for disgorgement of the fruits of his illegal conduct in a subsequent civil action based upon the same facts, much of the deterrent value of the conviction is diluted.

10 *Mem.St.U.L.Rev.* 550, 571 (1980).

Courts are and should be communicators of values. When individuals engage in far-reaching misjudgments, as did these defendants, they must suffer the consequences of a chastening experience. Hopefully, by denial of the relief sought honesty will be reaffirmed as a central societal value in a time when permissiveness erodes the credibility of this time-tested virtue.

An order shall be submitted by the defendants denying them the relief afforded by *R.* 3:9–2.