BANKS, Justice,
for the Court:
This case requires us to consider whether evidence of a guilty plea to the charge of manslaughter is sufficient, standing alone, to enable a fact finder to conclude that one is prohibited from inheriting under our statutes which precluding one who willfully kills another from inheriting from that person. We follow established precedent and hold that it is not. We are also asked to decide whether a, foreclosure must be set aside for the sole reason that a subsequently filed “corrected” deed of trust was of record. Because nothing on the face of the “corrected” deed of trust referred to or abrogated the original deed of trust, we conclude that the foreclosure does not fail for that reason. We reverse and remand for further proceedings or findings with regard to the other attacks on the foreclosure in question and the remaining issues in the case.
I.
Linda VanDevender and her husband, Chrysler, bought a house from Robin Hood in 1985 and gave a note and deed of trust with Robin’s brother, C.L. Hood, as trustee. They received a deed as joint tenants with right of survivorship. The deed of trust was duly recorded. For some reason not fully explained at trial a so-called “corrected” deed of trust was filed ten days later. The only differences between the original and the “corrected” deeds of trust are that the latter has the word “Corrected” typed at the beginning; there is a typed clause which is, in essence a “due on sale” clause and is duplica-tive of the “Sixth” printed clause of the deed of trust; and the figure $18,000 is inserted as the amount of insurance required rather than $17,500. Linda alleged in pleading and asserted in testimony that she signed the original deed of trust but did not recall signing the “corrected” instrument.
VanDevender went into possession and paid the monthly notes and furnished the requisite insurance until VanDevender killed her husband on April 25, 1986. She later pled guilty to manslaughter and was given a twenty year suspended sentence on January 30, 1987. In the meantime, VanDevender defaulted by failing to pay the monthly note, provide the insurance and pay the property tax. Hoods employed Utica Attorney, Gerald B. Carmichael, to foreclose.
In August 1986 Robin Hood’s lawyer, Gerald Carmichael, wrote Linda, by certified mail, advising her that an insurance premium had not been paid and that an installment had been missed. In the letter, she was given ten days to cure under the threat of the initiation of legal proceedings. Later, foreclosure began on the original deed of trust. On October 7, 1986 Linda paid the lawyer $1,016.54, which corresponds with three monthly payments and the amount of the insurance premium. The lawyer accepted that amount and gave Linda a receipt which indicated that there remained due $240. The lawyer said and Linda understood that the amount remaining was for advertising and attorney’s fee with respect to the foreclosure.
There is a dispute as to whether and when Linda tendered this amount. The lawyer testified that it was not tendered prior to completion of the foreclosure on October 27, 1986 and that the only conversation that he may have had with Linda was well after this date at a time when the foreclosure was completed and the expenses associated with it had been paid by Robin Hood. Linda testified that she went to the lawyer’s office on October 15,1986 and tendered the money. She stated that the lawyer told her that she didn’t owe him anything, that the matter had been handled by Robin Hood. Linda tape recorded the meeting but the timing of the encounter remains in considerable doubt because it appears that there was a discussion concerning an event which took place several months after October 15.
After the foreclosure Linda continued to reside on the property and made regular payments to Hood by money order for sever *200 al months. Hood retained these money orders but did not cash them. They were tendered to the court when Hood brought an action to evict Linda, prompting Linda to file an action seeking to set aside the foreclosure and for damages. The administrator of Chrysler’s estate intervened claiming Chrysler’s share of the property and relied on Linda’s assertions to set aside the foreclosure. A preliminary injunction was issued preventing eviction pending a hearing on the merits of Linda’s claims. The court directed that the six previous money orders be deposited and all future payments be made to the clerk of the court.
The matter remained unresolved when, in November 1989, Robin Hood filed an original action for judicial foreclosure naming Linda, Chrysler’s estate and Chrysler’s heirs. That complaint asserted that Linda had failed to continue to make payments to the court on the note and had failed to pay property taxes and insurance on the property.
On May 11, 1990 the separate matters were consolidated for trial. Trial commenced on October 3, 1990, recessed and recommenced on February 12, 1991. After taking the matter under advisement, the chancery court issued its memorandum opinion on July 24, 1991 and entered a judgment on August 12,1991. The chancellor concluded that the estate had not shown that Linda willfully killed her husband and, therefore, had no claim with respect to the property. The chancellor also concluded that the 1986 foreclosure was ineffective because it was taken on the original deed of trust and left the “corrected” deed of trust outstanding. Finally, the chancellor found that Linda had been constructively evicted from the premises by Robin Hood’s failure to apply insurance proceeds received by him for damage to the property to repair the property, leaving the property not habitable. The court awarded Linda damages and attorney’s fees.
From that judgment, the estate and Robin Hood appeal.
II.
On appeal Robin Hood asserts that the court erred in setting aside the foreclosure. He contends that he complied with the statutory prerequisites to foreclosure and that the trustee issued a valid trustee’s deed. Both Linda and the estate assail this position asserting in addition to the ground relied upon by the chancellor, the following: a) Linda redeemed or was wrongfully prevented from redeeming; b) the deed of trust fails because the trustee was not a disinterested party; c) the foreclosure fails because the note is usurious in that it requires a 25% prepayment penalty; d) the trustee faded to testify that he ratified actions taken by the attorney rather than by himself during foreclosure proceeding; and e) the sale price was grossly inadequate.
While the chancellor discussed the evidence on redemption, she made no findings whatsoever in this regard. Nor did she make findings on any of the other attacks on the foreclosure. It is not clear from the record, how and to what extent these latter grounds of attack were asserted. We conclude that the chancellor erred in setting aside the foreclosure for the reason stated.
The corrected deed of trust, whatever its validity, did not by its terms supplant the original deed of trust. Linda suffers no injury by the fact that the corrected deed of trust, the validity of which she contests, remains of record, for it affects property in which she has no interest after a valid foreclosure.
It follows that we must reverse and remand this matter for further consideration. The chancellor failed to resolve the redemption issue and we decline to do so here. Certain of the other grounds for setting aside the judgment appear wanting. For example, this Court decided in Wansley v. First National Bank of Vicksburg, 566 So.2d 1218 (Miss.1990) that a trustee’s affiliation with a beneficiary has no effect on the validity of a deed of trust. Additionally, the statute cited in support of the usury claim is inapplicable to the note in question both because it was enacted after the note was executed and because the statute, by its terms, does not apply to this type loan. Miss.Code Ann.1972 § 75-17-31 (Revised). Nevertheless, we decline to rule on these and remand the entire matter to the chancellor for resolution.
*201 in.
The estate appeals the ruling of the chancellor that it has no claim to the property by virtue of the statutes precluding one convicted of wrongfully killing from inheriting from the person killed. Miss.Code Ann. 1972 §§ 91-1-25, 91-5-33.[1]
The chancellor observed that in Franklin Life Ins. Co. v. Strickland, et al., 376 F.Supp. 280 (N.D.Miss.1974) the federal district court held that a manslaughter conviction is not conclusive on the issue of whether the guilty party may inherit. She leapt from that observation to the conclusion that the estate’s claim fails. If that were all, one could conclude that the chancellor misread the tenor of Franklin.
In Franklin, however, the district court relied upon the earlier pronouncement of this Court to the same effect. Henry v. Toney, 211 Miss. 93, 50 So.2d 921 (1951). Moreover, we said in Henry that not only is evidence of a manslaughter conviction or plea not conclusive, it is only slight evidence of willfulness, and evidence only that a killing occurred. Here the only evidence on the issue is that Linda admitted that she had been charged with murder and pled guilty to manslaughter. She received a 20 year suspended sentence. No further evidence of culpability was offered by the estate and no evidence was offered by Linda. There are several manslaughter statutes in this state, some of which do not require willfulness. Miss.Code Ann. §§ 97-3-27 through 97-3-47 (1972).
The burden of proof is upon the estate to show that the normal operation of the joint estate, survivorship, should not obtain. Mississippi State Highway Commission v. Hillman, 195 So. 679, suggestion of error overruled 198 So. 565, 189 Miss. 850 (1940); Coahoma County Bank & Trust Co. v. Feinberg, 128 So.2d 562, 241 Miss. 381 (1961); Town of Ackerman v. Choctaw County, 128 So. 757,157 Miss. 594 (1930). Applying the rationale expressed by the court in Henry we are compelled to conclude that the estate failed to carry its burden of proof. It follows that we affirm the decision of the chancellor in this regard.
IV.
The chancellor’s award of damages and attorney’s fees was based, at least in part, on the conclusion that the foreclosure was defective. Because we reverse and remand on that issue, we do not consider the separate issues raised with respect to damages. While it is true, as Robin Hood asserts, that damages for wrongful eviction do not appear to be claimed in the pleadings, there was a substantial amount of testimony on the issue and no objection was lodged on the ground that the issue was not properly before the court. The objections which appear all seem to go to the merits of particular items claimed. We trust that this issue with respect to both liability and damages and all others not here disposed of will be revisited on remand.
For the foregoing reasons, the judgment is affirmed as against the estate of Chrysler Wayne VanDevender and reversed in all other respects. This matter is remanded to the chancery court for further proceedings.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
HAWKINS, C.J., specially concurs with separate written opinion joined by LEE and PRATHER, P.JJ., and JAMES L. ROBERTS, Jr., J.

. These statutes refer to inheritance under the laws of descent and distribution and by will respectively. This case involves a Right of Sur-vivorship. We have not addressed the issue whether a wrongful killing has an effect or that right. We have ruled that these statutes announce a public policy and we have applied that policy in the context of an insurance beneficiary. Gholson v. Smith, 210 Miss. 28, 48 So.2d 603 (1950). We dispose of this case assuming but not deciding that the public policy would affect the right of survivorship in the same manner as it affects the beneficiaries of insurance proceeds.