IN THE SUPREME COURT OF MISSISSIPPI
NO. 2003-CA-02689-SCT

*MISSISSIPPI POWER COMPANY AND SOUTHERN
COMPANY SERVICES, INC.*

*v.*

*HERBERT C. HANSON, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/10/2003 |
| TRIAL JUDGE: | HON. DONALD B. PATTERSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | PAUL RICHARD LAMBERT |
| | BEN HARRY STONE |
| | JONATHAN PAUL DYAL |
| | RODERICK MARK ALEXANDER, JR. |
| ATTORNEYS FOR APPELLEE: | C. VICTOR WELSH, III |
| | FLOYD J. LOGAN |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 01/06/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND RANDOLPH, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. Herbert C. Hanson, Jr., filed his petition for permanent injunction against Mississippi Power Company (MPC), Southern Company Services, Inc. (SCS), Interstate Fibernet, Inc., (IFN) and ITC Delta Communications, Inc. (ITC), in the Chancery Court of the First Judicial District of Harrison County, Mississippi, asserting claims for trespass, unjust enrichment and injunctive relief resulting from IFN's third- party use of MPC's fiberoptic telecommunication

line across Hanson's property. Hanson alleged in his complaint that SCS was the parent company of MPC. Hanson further stated in his complaint that IFN owns all the common stock of ITC.

¶2. SCS filed its answer asserting as affirmative defenses: that it was not responsible for actions of MPC; that it had no easements nor any interest in any easements across any real property in Mississippi, including Hanson's property; and that it owned no communication lines, fiber optic telecommunication lines on any other communication equipment in Mississippi. SCS answered that it had not entered into any contracts with any third party to lease any communication lines, fiber optic lines or other communication equipment in Mississippi. SCS also asserted that Hanson's claims against SCS were without merit and frivolous. In its answer, SCS sought dismissal of Hanson's claims with prejudice and all costs assessed against Hanson. Southern Company is the parent company of MPC, and SCS is another subsidiary of Southern Company that provides technical and financial services to all of the electric companies that are subsidiaries of Southern Company. MPC filed its answer and counterclaim to Hanson's petition for permanent injunction. MPC admitted that IFN has used its fiber optic line which crosses Hanson's property. MPC states that it "owns the fiber optic line and has the right to permit third parties to use the line without incurring liability."

¶3. MPC asserted as an affirmative defense that it "has the right to allow third parties to utilize a portion of the capacity of its telecommunication line," including the line located on Hanson's property, "because such use is incidental to MPC's primary and permanent use in connection with its providing electric utility service, and such use is necessary or convenient in connection with providing electric utility service." MPC asserts that "[a]ny third-party use

2

of the MPC's telecommunication line was specifically approved and ordered by final order of the Mississippi Public Service Commission who has exclusive original jurisdiction over such matters pursuant to the Mississippi Public Utilities Act § § 77-3-1; et seq." MPC contends that "[t]hird-party use of MPC's easements by telecommunication companies such as IFN and ITC are permitted by the Telecommunications Act of 1996."

¶4.     MPC filed a counterclaim seeking a declaration of its rights with respect to its installation, maintenance and use of its telecommunication lines and facilities including, but not limited to, allowing third parties to utilize portions of the capacity of its telecommunication lines, including the line located on Hanson's property.    MPC argues that such use is incidental to its primary and permanent use in connection with its providing electric utility service, and such use is necessary or convenient.    In its counterclaim, MPC requested that the trial court enjoin Hanson or anyone acting for, through or on behalf of him, from interfering with MPC's full use and enjoyment of its telecommunication line.    IFN and ITC filed its answer to Hanson's petition alleging similar defenses to those raised by MPC.    IFN and ITC argued that MPC retained the right to allow third parties to utilize a capacity of MPC's telecommunication fiber optic line because its use is incidental to MPC's primary and permanent use to provide electrical service. IFN and ITC assert that Hanson's petition against them should be dismissed because they at all times acted in good faith and relied upon representation of MPC that MPC had the legal and statutory authority to allow IFN and ITC access to MPC's fiber optic cable lines installed on its electric power lines.    IFN and ITC sought to have Hanson's petition for permanent injunction dismissed with all costs assessed to Hanson.

¶5.     Motions for summary judgment were filed by MPC, SCS, IFN and ITC.   Due to outstanding discovery at the time the motions for summary judgment were filed, Hanson filed a motion to compel discovery and abate the motion for summary judgment, or in the alternative for time to respond.   The parties entered into a scheduling order setting time to complete discovery and designate experts.

¶6.     The trial court on its own motion entered an order recusing all the chancellors of the Eighth Chancery Court District from serving as trial judge.   Upon request by the chancellors of the Eighth Chancery Court District, this Court appointed the Honorable Donald Patterson pursuant to Miss. Code Ann. § 9-1-105 to preside as special chancellor.   Upon being specially appointed, Chancellor Patterson initially held the parties to the scheduling order previously entered by the trial court.   Later, the trial court denied the defendants' motions for summary judgment and amended the scheduling order.   The trial court ordered that the case be "bifurcated with the first phase ("Phase 1") to consist of only one issue, i.e. whether IFN's third party use of MPC's fiber optic telecommunication line is 'in connection with' supplying electricity to MPC's customers."   The trial court established the schedule for "Phase 1," set the hearing date for "Phase 1" for October 28, 2003, and ordered that the parties provide the trial court a joint pretrial order regarding "Phase 1."   By separate order, the trial court further set the date to file and serve all pretrial motions and set the date to hear pretrial motions.

¶7.     On October 22, 2003, Hanson filed a motion to dismiss his action filed against MPC, SCS, IFN and ITC **with prejudice**.   The trial court held a hearing on October 24, 2003, initially denying Hanson's motion to dismiss, however, it subsequently entered its opinion granting Hanson's motion to dismiss his action against MPC, SCS, IFN and ITC with prejudice.   The trial

4

court's opinion also addressed SCS's ore tenus motion for attorney fees, costs and expenses, as well as, the dismissal of MPC's counterclaim for injunctive relief against Hanson. MPC filed its notice of appeal to this Court raising the issue of whether the trial court erred in dismissing its counterclaim for injunctive relief. MPC alleges that it did not receive adjudication as to the claims raised in its counterclaim. SCS also filed its notice of appeal to this Court regarding the trial court's denial of its ore tenus motion for attorney's fees, costs and expenses. IFN/ITC and Hanson did not appeal the trial court's decision.

## ANALYSIS

¶8. This Court has held that "[t]he findings of a chancellor will not be disturbed on review unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard." *McNeil v. Hester*, 753 So. 2d 1057, 1063 (Miss. 2000). The standard of review applied by this court when reviewing a chancellor's decision is abuse of discretion. *Id.* "However, for questions of law, the standard of review is de novo." *Id*.

### I. MPC's Counterclaim for Injunctive Relief

¶9. In 1964, MPC was granted an easement by the previous owner of Hanson's property "to construct, operate and maintain electric lines and all telegraph and telephone lines, towers, poles, wires, and appliances and equipment necessary or convenient in connection therewith from time to time and counterpoise wire and other counterpoise conductors, upon, over, under and across a strip of land...." The easement also provides "all the rights and privileges necessary or convenient for the full enjoyment or use thereof for the purpose above described."

¶10. MPC cites **McDonald v. Mississippi Power Co.**, 732 So. 2d 893 (Miss. 1999), a case that it had been previously involved in, for support of its right to use its existing easements to install and utilize fiber optic cables and to enter into third-party leases of the fiber optic lines. The easement in **McDonald** provides identical language as the easement at hand. **McDonald**, 732 So. 2d at 895.

¶11. In **McDonald,** this Court stated:

> Under the above easement, MPC has the right to maintain a telephone line for use in connection with providing electrical service. The clear intent of the easement was to grant MPC the right to install and maintain telephone lines to be used in connection with the providing of electrical service. A fiber optics cable is nothing more than a technologically advanced or new type of telephone line. The chancellor was correct in holding that the granting clause of the above easement gives MPC the right to maintain a fiber optics cable.

*Id.* at 897.

¶12. However, this Court in **McDonald** ultimately held that "MPC's rights, and those of its successors and assigns are limited by the language of the easements in question, the plain languages of which limits the use of telephone lines to be in connection with providing electrical services." *Id.* at 898.

¶13. MPC argues that the trial court erred by not addressing its counter-claim despite dismissing Hanson's lawsuit with prejudice. MPC's primary concern on appeal and at trial with Hanson's dismissal is that Hanson's son and transferee, David Hanson, will now be able to pursue further litigation against them on the same issues raised in these proceedings filed and dismissed by Hanson. However, the record reflects that the trial court specially made a determination of MPC's rights. Therefore, we find that MPC has received an adjudication of its rights subject to those rights being consistent with this Court's holding in **McDonald**.

6

¶14. The trial court determined that M.R.C.P. 25© and res judicata operate to alleviate the concerns raised by MPC regarding Hanson's successor in interest.

¶15. M.R.C.P. 25© states, in its comments, that if the property is transferred the judgment is binding on the successor in interest, even if not named at the time of the judgment. M.R.C.P. 25© provides:

> In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party...

The comments to M.R.C.P. 25© further state in pertinent part:

> The most significant feature of Rule 25© is that it does not require that any action be taken after an interest has been transferred; the action may be continued by or against the original party and the judgment will be binding on his successor in interest even though he is not named...

¶16. We find MPC's argument to be without merit.

## II. SCS's Ore Tenus Motion

¶17. SCS does not appeal the trial court's decision as to the merits of the case related to dismissal of Hanson's claims with prejudice. Rather, SCS appeals the trial court's denial of its ore tenus motion for attorney's fees, costs and expenses associated with its defense. Further, Hanson does not appeal the decision of the trial court.

¶18. SCS maintained that it should not have been named as a defendant by Hanson as it was not the parent company of MPC and had no easements or fiber optic telecommunications lines in Mississippi. At the hearing conducted by the trial court regarding Hanson's motion to

dismiss with prejudice, SCS made an ore tenus motion for attorney's fees, costs and expenses associated with its defense.[1]

¶19.    The trial court granted Hanson's motion to dismiss the claims against SCS with prejudice.    The trial court found the dismissal with prejudice to be a final adjudication of the issues, stating:

> [A]s to defendant SCS it . . . owns no easement or fiber optic lines across plaintiff's property and has not entered into any contracts to lease communication or fiber optic lines or communication equipment to any third parties and that SCS is not responsible for the actions of MPC...

¶20.    On appeal, SCS argues that:

> The circumstances that would justify an award of attorney's fees and expenses to a defendant as a condition to a court granting a plaintiff's motion to dismiss with prejudice is a case of first impression in Mississippi. [Fn. 31, *See Shaw v. Shaw*, 603 So.2d 287, 293 (Miss. 1992) ("In the absence of clear precedent in past decisions by this Court, we look to the federal courts for guidance in interpreting the Rules of Civil Procedure").] Several federal courts have held that where a plaintiff has moved for the voluntary dismissal of an action, with prejudice, a defendant is entitled to an award of attorney's fees and expenses in cases presenting "exceptional circumstances." *See Aerotech, Inc. v. Estes,* 110 F.3d 1523, 1528 (10th Cir. 1997)*; Steinert v. Winn Group, Inc.,* 2000 WL 1466178, *1 (D. Kan. 2000)*; Nippy, Inc. v. Pro Rok, Inc.,* 932 F. Supp. 41, 43 (D.P.R. 1996)*; John Evans Sons, Inc. v. Majik-Ironers, Inc.,* 95 F.R.D. 186, 191 (E.D.Pa. 1982)*.
>
> The exceptional circumstances in this case justify an award of attorney's fees, costs and expenses to SCS.    From the very beginning and during every stage of this litigation, SCS informed Hanson and his attorneys and presented evidence that SCS was not the parent company of MPC, that SCS did not own any interest in fiber optic telecommunication lines in Mississippi and that SCS did not own any easements in Mississippi.    The comments to Rule 41 of the Mississippi Rules of Civil Procedure state that the imposition of conditions upon the granting of a plaintiff's motion to dismiss should be issued in order to <u>protect the defendant.</u>

---

[1] SCS did not request attorney's fees in its answer to Hanson's claims.

¶21. SCS also references M.R.C.P. 11 on appeal is support of attorney's fees, costs and expenses when there is no good faith ground to support the pleadings or arguments. *See Vicksburg Refining, Inc. v. Energy Resources, Ltd.,* 512 So. 2d 901, 902 (Miss. 1987) ("Courts have the inherent power to impose sanctions to protect the integrity of their processes."). M.R.C.P. 11(b) provides that:

> If any party files a motion or pleading which, in the opinion of the Court, is frivolous or is filed for the purpose of harassment or delay, the Court may order such a party, or his attorney, or both, to pay the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees.

¶22. Hanson argues on appeal that:

> In 1986, SCS entered into a Fiberoptic Facilities and Service Agreement with MPX Systems, Inc., the predecessor to IFN, in the State of Georgia. By 1995, SCS and other members of the Southern Electric System, including MPC, had agreed to join together and consolidate into a single document an agreement to provide for the creation of additional fiberoptic lines along Southern Electric System electricity transmission distribution lines in various states, including Georgia, Alabama, and Mississippi. ®. 2176- 2278) ("1995 Fiber Optic Services Agreement") With the creation of the 1995 Fiber Optic Service Agreement, SCS, MPC, and IFN's predecessor in interest, would begin to use MPC electricity transmission easements in Mississippi, not for the purpose of providing electrical power to Mississippi customers, but for the purpose of providing telecommunications services to the general public. This activity, i.e., subleasing fiberoptic capacity on electricity transmission easements for telecommunications purposes, was condemned by the Mississippi Supreme Court in the case of *McDonald v. Mississippi Power Company*, 732 So.2d 893 (Miss. 1999).

> Ultimately, MPC lost *McDonald* because MPC was unable to demonstrate to the Mississippi Supreme Court that it had obtained the appropriate easements and land rights to install and operate a fiberoptic telecommunications system for purposes other than the transmission of electricity. Since losing *McDonald*, MPC, IFN, SCS, ITC, and/or other entities which were parties to the 1995 Fiber Optic Services Agreement have argued before various state court judges, federal court judges, and engaged in interlocutory appeal before this Supreme Court, all without success, in an effort to advance their position that they should be

9

entitled to use electricity transmission easements in Mississippi for purposes of operating an unregulated fiberoptic telecommunications system.

¶23. Hanson also cites *Grisham v. Hinton*, 490 So.2d 1201 (Miss. 1986), in support of the trial court's denial of SCS's motion for attorney's fees. In *Grisham*, this Court stated:

> With the sole exception of punitive damages cases, in the absence of a contractual provision or statutory authority therefore, this Court has never approved awarding trial expenses and attorneys' fees to the successful litigant. It has consistently been our view that such expenses are not allowable as part of the costs.

*Id.* at 1205

¶24. In the case sub judice, the trial court denied SCS's ore tenus motion for attorney's fees and cost, stating:

> Defendants' ore tenus motion for attorney fees and costs is not well taken. When a lawsuit is voluntarily dismissed with prejudice, it has been held that the court lacks the power to require the payment of attorney's fees unless the case is of a kind in which attorney's fees otherwise might be ordered after termination on the merits, i.e., when there is independent statutory authority for such an award, or perhaps as defendants assert "exceptional circumstance." **There is no independent statutory authority and I am of the opinion that although the circumstances may be unusual, they are not exceptional to the extent that an award of attorney's fees would be appropriate.** The motion is denied.

(emphasis added).

¶25. The distinction addressed by the trial court in granting Hanson's motion to dismiss was that Hanson's claims were dismissed **with prejudice** rather than **without prejudice.** The trial court determined the dismissal with prejudice to be a final adjudication of the issues. Therefore, SCS obtained a favorable final adjudication on the merits of the case.

¶26. The record reflects that the trial court considered SCS's ore tenus motion for attorney's fees, costs and expenses. We find that the trial court granted the dismissal of Hanson's claims

10

with prejudice and determined the dismissal of Hanson's claims to be a final adjudication in favor of SCS. The trial court was in the best position to consider SCS's motion, and the record does not reflect the trial court abused its discretion in denying SCS's motion for attorney's fees, costs and expenses. Therefore, we find SCS's assignment of error to be without merit.

## CONCLUSION

¶27. For the foregoing reasons, the judgment of the Chancery Court of the First Judicial District of Harrison County, Mississippi, is affirmed.

¶28. **AFFIRMED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**

11