# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-00315-SCT

*IN THE MATTER OF THE ESTATE OF JOAN
ARMSTRONG, DECEASED: JOHN R.
ARMSTRONG*

*v.*

*TERRY L. ARMSTRONG, EXECUTOR*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/2014 |
| TRIAL JUDGE: | HON. JAYE A. BRADLEY |
| TRIAL COURT ATTORNEYS: | E. FOLEY RANSON |
| | STACIE E. ZORN |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | STACIE ELIZABETH ZORN |
| ATTORNEY FOR APPELLEE: | E. FOLEY RANSON |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 07/30/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This is a case of first impression regarding the interpretation of Mississippi Code Section 91-5-33, known as the "Slayer Statute," which states that anyone who "wilfully cause[s] or procure[s]" the death of another shall not inherit from his or her victim. John R. Armstrong, a severely mentally ill man, killed Joan Armstrong, his eighty-year-old mother. This fact is not disputed by any party. The Circuit Court of Jackson County determined that John was not competent to stand trial for the murder of Joan, and John was committed to the state hospital at Whitfield, where he resides today. Based on the Slayer Statute, John's four

siblings requested that the devise to John in their mother's will be declared void. The chancellor granted their motion, and John, through his court-appointed guardian *ad litem*, appeals the ruling. Finding that a hearing to determine John's mental status at the time of the murder is necessary prior to granting the motion, we reverse and remand for a hearing consistent with this opinion.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

¶2. On August 7, 2010, Joan Armstrong was contacted by several of her son's neighbors, who were worried about their children's safety, after they noticed John acting erratically. John had a long history of serious mental illness, having been treated since 1989.[1] Joan picked up John at his apartment and brought him back to her condominium. Joan had invited some of her friends to come over to the condominium swimming pool. Worried that his mother was leaving him, John went upstairs and retrieved a crochet-covered brick, which he used to hit Joan repeatedly over the head. He then moved her body to the bathroom and repeatedly stabbed her. He informed law enforcement officers from the Ocean Springs Police Department (OSPD) that he was preparing her body to be buried by bleeding her.

¶3. Joan's death certificate listed her cause of death as "contusion of brain with subdural and subarachnoid hemorrhage [due to] multiple blunt force injuries of head." Joan also sustained multiple stab wounds and rib fractures. Joan's death was listed as a homicide due to the multiple strikes to her head.

---

[1] John suffers from delusions and hallucinations and has been diagnosed as a paranoid schizophrenic.

¶4.     John admitted to the OSPD that he had killed Joan. His confession was overheard by his sister-in-law, Lee. John was arrested and subsequently indicted for Joan's murder.

¶5.     The circuit court ordered that John receive a mental evaluation and treatment from the state hospital at Whitfield, to determine if he was competent to stand trial. Dr. Reb McMichael, Chief of Forensic Services at the Mississippi State Hospital, opined that John was not competent to stand trial. The circuit court then committed John to Whitfield, ordering that he remain at that facility until he was declared competent to stand trial. John continues to undergo treatment at Whitfield.

¶6.     Terry L. Armstrong, John's brother, filed a petition in the Chancery Court of Jackson County, Mississippi, to probate Joan's will. The will appointed Terry as executor. Joan left her estate equally to her five children. The petition listed the following children as Joan's sole heirs-at-law: Terry L. Armstrong, David Armstrong, Jill Seiler, Gail Jones, and John Armstrong. Joan's will was admitted to probate, and letters testamentary were granted to Terry, as executor. The chancellor also entered an order establishing Joan's heirs-at-law as Terry Armstrong, David Armstrong, Jill Seiler, Gail Jones, and John Armstrong.

¶7.     Once the heirs-at-law were determined, Terry filed a Motion to Declare Devise Void as to John, based on the Slayer Statute. Terry requested that this motion not be heard until the pending criminal charges against John were finally resolved. Due to John's mental illness, Terry requested that a guardian *ad litem* be appointed. Terry also filed a Motion for Partial Distribution, acknowledging that significant time might pass before John's guilt was determined. Therefore, the assets of Joan's estate, exclusive of the portion assigned to John,

3

should be distributed to the other four children. The chancellor entered an order distributing eighty percent of Joan's residuary estate equally to four of Joan's children and placing John's twenty percent in a supplemental needs trust.

¶8. Stacie E. Zorn was appointed to represent John as his guardian *ad litem*. In response to the motion to declare the devise to John void, John argued that Terry had failed to prove he willfully or feloniously caused the death of Joan; the matter was not ripe for hearing because there had been no adjudication of his guilt in the criminal matter; and that, due to his mental incapacity, he lacked the requisite intent to commit a willful act; therefore, the Slayer Statute was not applicable.

¶9. After the chancellor heard arguments on the motion, she entered an order declaring the devise to John void. The chancellor recognized that this was a case of first impression, as there had been no decision addressing whether a person determined to be mentally incompetent to stand trial could be considered to have "wilfully" caused the death of another. The chancellor determined that the meaning of "wilfully" should be interpreted within the civil context, and not the criminal context. The chancellor found the following evidence to be proof of John's willfulness in Joan's killing:

1. John was discovered at Joan's home with Joan's body by law enforcement. John was covered in Joan's blood.

2. In the immediate aftermath of the homicide, John confessed to law enforcement. This confession was witnessed by John's sister-in-law who offered testimony at this motion hearing.

3. OSPD, at the conclusion of their investigation, issued a Complaint alleging John, "feloniously, willfully and unlawfully with deliberate design" caused the death of Joan.

4

4.      A Jackson County Grand Jury returned an indictment against John for the willful and felonious murder of Joan.

Based on the above evidence, the chancellor held that John willfully caused the death of his mother and could not benefit from her estate pursuant to the Slayer Statute. The chancellor stated that:

> [t]his is the type of behavior our Slayer Statute contemplates. Further, while it is acceptable under our justice system to allow a killer to escape criminal liability due to his mental illness, it would be a perversion of justice to allow him to benefit from it in this instance, especially in a court of equity.

John timely filed notice of his appeal. The chancellor ordered that the portion of the estate set aside for John would remain in the registry of the court or other trust account pending the outcome of this appeal.

## STATEMENT OF THE ISSUES

¶10.   John presents the following three issues:

I.      Whether the Chancery Court was precluded from ruling upon the Executor's Motion to Declare Devise Void under the Mississippi slayer statute, Mississippi Code Annotated § 91-5-33, when there has been no outcome in John's criminal proceedings due to his mental incapacity to stand trial at this time.

II.     Whether an individual charged with murder but not tried due to mental incapacity may be precluded from inheriting under the Mississippi slayer statutes, Mississippi Code Annotated §§ 91-1-25 and 91-5-33.

III.    Whether the Executor presented sufficient evidence to prove that the killing of Joan Armstrong was intentional on the part of John Armstrong.

## ANALYSIS

5

¶11. Findings of a chancellor will not be disturbed on review unless the chancellor was "manifestly wrong, clearly erroneous, or applied the wrong legal standard." ***Bluewater Logistics, LLC v. Williford***, 55 So. 3d 148, 166 (Miss. 2011) (quoting ***Powell v. Campbell***, 912 So. 2d 978, 981 (Miss. 2005)). The Court will review a chancellor's judgment for abuse of discretion. ***Hotboxxx, LLC v. City of Gulfport***, 154 So. 3d 21, 24 (Miss. 2015) (citing ***Mississippi Power Co. v. Hanson***, 905 So. 2d 547, 549 (Miss. 2005); ***McNeil v. Hester***, 753 So. 2d 1057, 1063 (Miss. 2000)). For questions of law, the Court will apply the *de novo* standard of review. ***Hotboxxx***, 154 So. 3d at 24.

¶12. When called upon to examine a statute, "the Court first looks to the language of the statute." ***Lawson v. Honeywell Intern., Inc.***, 75 So. 3d 1024, 1027 (Miss. 2011) (citing ***Pinkton v. State***, 481 So. 2d 306, 309 (Miss. 1985)). "If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." ***Id.*** (citing ***Clark v. State ex rel. Miss. State Med. Ass'n***, 381 So. 2d 1046, 1048 (Miss. 1980)). Section 91-5-33 of the Mississippi Code reads in pertinent part:

> If any person shall *wilfully* cause or procure the death of another in any manner, he shall not take the property, or any part thereof, real or personal, of such other under any will, testament, or codicil. Any devise to such person shall be void and, as to the property so devised, the decedent shall be deemed to have died intestate.

Miss. Code Ann. § 91-5-33 (Rev. 2013) (emphasis added).

¶13. The key word in this statute is "wilfully." In the criminal context, this Court has addressed the meaning of "wilfully," finding that it is synonymous with "knowingly" and "intentionally."

> The Court has held that terms "willfully" and "knowingly" have substantially the same meaning in criminal statutes. *Ousle*y [*v. State*], [145 Miss. 451,]122 So. [731,] 732 [(1929)] (indictment was sufficient even though it used the words "willfully, unlawfully[,] and feloniously" rather than "knowingly" as used in the statute). *See also Boyd v. State*, 977 So. 2d 329, 335 (¶ 22) (Miss. 2008) ("An act 'willfully' done is an act 'knowingly' and 'intentionally' done."); *Moore v. State*, 676 So. 2d 244, 246 (Miss. 1996) ( "willfully" has the same meaning as "knowingly"). Relying on *Ousley*, the Court of Appeals held that the terms "wilfully and feloniously" had substantially the same meaning as "purposely or knowingly" when ruling on the sufficiency of a jury instruction for aggravated assault. *Davis v. State*, 909 So. 2d 749, 752-53 (¶ 13) (Miss. Ct. App. 2005).

*State v. Hawkins*, 145 So. 3d 636, 641 (Miss. 2014). In *Ousley*, this Court held that "[a] willful act is one that is done knowingly and purposely with the direct object in view of injuring another." *Ousley*, 122 So. at 732 (quoting *Hazle v. So. Pac. Co.*, 173 F. 431 (C.C. Or. 1909)).

¶14. Additionally, the Model Penal Code reads that "[a] requirement that an offense be committed wilfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements appears." Model Penal Code § 2.02(8) (1962). A person acts "knowingly" with respect to a material element of an offense "if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist" and "if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result." Model Penal Code § 2.02(2)(b)(i)-(ii) (1962).

¶15. However, Section 91-5-33 is a civil statute. The usual meaning of "willful" in tort law is that an "actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." W. Prosser, *Handbook of the Law of Torts* § 34 (1971).

¶16. This Court has held that a person who willfully causes the death of another is barred from participating in the victim's estate. *Genna v. Harrington*, 254 So. 2d 525, 527 (Miss. 1971). "Mississippi's Slayer Statute is strictly construed and narrow in purpose." *In re Estate of Miller*, 840 So. 2d 703, 706 (Miss. 2003). "The sole purpose of a 'slayer statute' is to prevent the slayer from benefitting from the death of the victim or profiting from the wrongdoing. *Id.* (quoting 26B C.J.S. *Descent and Distribution* § 57, at 362-63 (2001)).

¶17. Mississippi courts have not addressed whether the Slayer Statute precludes insane persons from inheriting from their victims. Some cases have discussed manslaughter pleas, which are beneficial to this analysis. In *Henry v. Toney*, 211 Miss. 93, 50 So. 2d 921 (1951), the Court was presented with the issue of whether John Henry willfully caused the death of his wife, such that he could not inherit her land. Henry was charged with second-degree murder but pleaded guilty to manslaughter. *Id.* at 922. The Court noted that, under Mississippi statutes, manslaughter is not necessarily a willful killing. *Id.* at 923. "For that reason, it is obvious that such plea cannot be conclusive evidence of guilt of such a killing. On the contrary, it can amount to only slight evidence, or evidence merely that the killing has occurred." *Id.* The Court reversed the finding of the trial court that Henry could not inherit

8

his wife's property and remanded the case for a new trial, instructing the trial court that " all evidence which will throw any light on the issue of whether or not this killing was willful is competent and admissible." *Id.*

¶18.    In *Hood v. VanDevender*, 661 So. 2d 198 (Miss. 1995), Linda VanDevender killed her husband. Linda was charged with murder, pleaded guilty to manslaughter, and received a twenty-year-suspended sentence. *Id.* at 201. No further evidence of culpability was offered by her husband's estate. *Id.* The chancellor determined that the estate had failed to show that Linda willfully killed her husband. *Id.* at 200.

¶19.    On appeal, the Court considered "whether evidence of a guilty plea to the charge of manslaughter is sufficient, standing alone, to enable a fact finder to conclude that one is prohibited from inheriting under our statutes which precluding one who willfully kills another from inheriting from that person." *Id.* at 201. Relying on *Franklin Life Insurance Company v. Strickland*, 376 F. Supp. 280, 283 (N.D. Miss. 1974) ("Although a plea of guilty in a criminal proceeding and conviction thereon are clearly admissible in evidence, they are ordinarily not conclusive on the pleader and may be explained or rebutted in a subsequent civil case."), *Henry*, 50 So. 2d at 923 (Pleading guilty to manslaughter is only "slight evidence, or evidence merely that the killing has occurred."), and Mississippi manslaughter statutes which do not require willfulness, the Court ruled that Linda was not prohibited from inheriting from her deceased husband's estate. *Hood*, 661 So. 2d at 201.

¶20.    Numerous courts have held that an insane person would not be precluded by a slayer statute from inheriting from his or her victim, due to their mental condition at the time of the

9

killing. *See Estates of Ladd*, 91 Cal. App. 3d 219, 226, 153 Cal. Rptr. 888 (Ct. App. 1979) (Court held that a mother, who was insane at the time she murdered her two sons, was not barred from inheriting her two sons' estates by statute, which provides that no person who has unlawfully and intentionally caused the death of a decedent shall be entitled to succeed to any portion of estate or to take under any will of decedent, because insane persons are not capable of acting "intentionally."); *Hill v. Morris*, 85 So. 2d 847, 851 (Fla. Sup. Ct. 1956) ("The effect of the judgment of acquittal by reason of insanity was to establish conclusively that petitioner was not guilty of the public offense with which she was charged, because as a matter of criminal law she lacked the capacity to commit the crime." Therefore, the court held the insane widow was permitted to inherit from her deceased husband.); *Turner v. Estate of Turner*, 454 N.E.2d 1247, 1252 (Ind. Ct. App. 1983) (The court ruled that the equitable doctrine which sought to bar a person from profiting from his wrongful conduct had no application where an insane person shot and killed his parents.); *Ford v. Ford*, 307 Md. 105, 122, 512 A.2d 389, 398 (1986) (The court held that the slayer's rule was not applicable when the killer was not criminally responsible at the time he committed the homicide.); *In re Vadlamudi Estate*, 183 N.J. Super. 342, 443 A.2d 1113 (1982) (An insane slayer was allowed to inherit from her husband's estate.); *In re Wirth's Estate*, 59 Misc. 2d 300, 302-03, 298 N.Y.S.2d 565, 567-68 (Sur. 1969) (Court determined it was not against the state's public policy to permit someone who has killed "while insane subsequently to take a share of the estate of the deceased or the  proceeds of a policy of life insurance on the life of the deceased of which the insane killer is beneficiary."); *In re Lupka's Estate*, 56 Misc.

2d 677, 289 N.Y.S.2d 705 (Sur. 1968) (New York court held that a husband could take under his wife's will although the wife died from effects of assault by husband, where husband was mentally ill at time of assault.); *Quick v. United Benefit Life Ins. Co.*, 287 N.C. 47, 213 S.E.2d 563, 566 (1975) (Court prevented slayer statute's application in cases of involuntary manslaughter, justifiable or excusable homicide, accidental killing or where the slayer was insane.); *Hoffman's Estate*, 39 Pa. D & C. 208, 209-10 (1940) (Wife who killed her husband but found to be insane was entitled to share in her husband's estate.); *De Zotell v. Mutual Life Ins. Co.*, 60 S.D. 532, 245 N.W. 58, 65 (1932) (South Dakota's slayer's rule requires that the killer be "sane" for it to apply.); *Simon v. Dibble*, 380 S.W. 2d 898, 899 (Tex. Civ. App. 1964) (A Texas court determined the husband could inherit from the wife he killed because an insane person was not capable of willfully taking the life of another.); *In re Estate of Mahoney*, 126 Vt. 31, 220 A.2d 475 (1966) (Court determined slayer statute would not be applicable if the slayer was insane.).

¶21.    Other courts have held that the slayer rule is applicable, even if the killer was insane at the time of the murder. *See Dougherty v. Cole*, 401 Ill. App. 3d 341, 348, 934 N.E.2d 16, 22 (Ill. App. Ct. 2010) (The court determined that, although an individual was insane for criminal purposes, he was nevertheless cognizant that he was killing a person; therefore, the Slayer Statute prevented the killer from benefitting from his actions.); *Osman v. Osman*, 285 Va. 384, 737 S.E.2d 876, 879 (2013) (Virginia's slayer statute provides that in the absence of a conviction for murder or voluntary manslaughter, "a slayer shall mean any person 'who is determined, whether before or after his death, by a court of appropriate jurisdiction by a

11

preponderance of the evidence to have committed [murder or voluntary manslaughter].'" The court determined that the stipulated evidence clearly demonstrated that Osman intended to kill his mother; therefore, he should not be allowed to profit from his wrongdoing."); *In re Estate of Kissinger*, 166 Wash. 2d 120, 122, 132, 206 P.3d 665, 666, 671 (2009) (The court held that a not-guilty-by-reason-of-insanity verdict is not a complete defense to the slayer statute. "An action under the slayer statute is civil, and the determination of whether a slaying was willful and unlawful must be made in civil court notwithstanding the result of any criminal case. A finding of not guilty by reason of insanity does not make an otherwise unlawful act lawful." The court determined that Hoge's actions were willful and unlawful when he killed his mother, and Hoge was barred from recovering from his mother's estate.).

¶22. It is clear from well-established precedent that willful is synonymous with intentionally, knowingly, deliberately, and purposely. In order for the Slayer Statute to apply to this case, John must have acted willfully in killing his mother. The record reveals that John has suffered from hallucinations and delusions for more than two decades. He has been diagnosed as a paranoid schizophrenic. John's thoughts are disorganized and very difficult to understand, and he often speaks in "word salad," which means that he uses words that are unrelated and disconnected. However, the record is silent as to John's mental state at the time of the killing.

¶23. In this matter of first impression, this Court concludes that Mississippi should follow the majority of states and holds that the Slayer Statute requires a finding of *willful* conduct to preclude a person from inheriting from his or her victim. Because an insane person lacks

the requisite ability willfully to kill another person, the Slayer Statute is not applicable in cases where the killer is determined to be insane at the time of the killing.

> [T]he words used by Mr. Justice Nelson, when Chief Justice of New York, said that "self-destruction by a fellow being bereft of reason can with no more propriety be ascribed to the act of his own hand than to the deadly instrument that may have been used by him for the purpose," and "was no more his act, in the sense of the law, than if he had been impelled by irresistible physical force."

*Great S. Life Ins. Co. v. Campbell*, 148 Miss. 173, 114 So. 262, 263-64 (1927) (quoting *Manhattan Life Ins. Co. v. Broughton*, 109 U.S. 121, 132, 3 S. Ct. 99, 105, 27 L. Ed. 878 (1883)).

¶24. While this result is grounded in legal precedent, it may prove to be unsettling to some. However, it is not the duty of this Court to determine public policy. If the law as it now exists is in need of change, that task is for the Legislature.

## CONCLUSION

¶25. Based upon this Court's holding that the Slayer Statute requires a finding of *willful* conduct in order to preclude a person from inheriting from his or her victim, this judgment is reversed and the case is remanded for a hearing to determine John's mental status at the time of the murder and whether he wilfully caused Joan's death. The Slayer Statute will be applicable only if it is proven that, at the time of the murder, John's actions were willful. The chancellor is instructed that " all evidence which will throw any light on the issue of whether or not this killing was willful is competent and admissible." *Henry*, 50 So. 2d at 923.

¶26. **REVERSED AND REMANDED.**

13

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**