# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CP-00163-COA

IN THE MATTER OF THE ESTATE OF ERIC          APPELLANT
LANE AVERY, DECEASED:
ALLEN WAYNE AVERY

v.

THE ESTATE OF ERIC LANE AVERY,          APPELLEE
DECEASED, BY MARK E. NORTON, AS
ADMINISTRATOR/EXECUTOR

| | |
|---|---|
| DATE OF JUDGMENT: | 02/03/2022 |
| TRIAL JUDGE: | HON. SHEILA HAVARD SMALLWOOD |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ALLEN WAYNE AVERY (PRO SE) |
| ATTORNEY FOR APPELLEE: | MARK EDWARD NORTON |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 02/21/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., SMITH AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     On February 3, 2022, the Lamar County Chancery Court entered an order granting Executor Mark E. Norton's amended petition for approval of the first and final accounting and request to close the estate of Eric Lane Avery (Avery), deceased, and discharge the executor.   Alleging that the chancery court wrongfully closed the estate, one of two beneficiaries of the estate, the deceased's son Allen Wayne Avery (Allen) appealed pro se.[1] On appeal, Allen requests that the estate be re-opened and "frozen" until (1) his father's

---

[1] The only other beneficiary to Avery's estate is his daughter Janice Marie Avery Carson (Janice).

cause of death is amended on his death certificate, and (2) Janice Marie Avery Carson's culpability, if any, in Eric Avery's death is determined.

## FACTS AND PROCEDURAL HISTORY

¶2.    Eric Avery passed away on March 2, 2021, while having a fixed place of residence in Lamar County, Mississippi.  His death certificate reflected that his cause of death was "malignant neoplasm of upper lobe of left lung."  Notably, before his death Avery was diagnosed with lung cancer.  Avery left a last will and testament dated November 25, 2008, that listed his children, Allen and Janice, as the sole beneficiaries of his estate.  Allen was also listed as the executor.

¶3.    On May 12, 2021, Allen filed a petition to probate Avery's last will and testament. An order was entered on May 13, 2021, allowing the will to be probated and further providing "that upon the taking of the Oath of Office by Allen Wayne Avery, then Letters Testamentary shall issue to him as Executor of said Will and Estate, to serve without bond." After a hearing on the estate attorneys' motion to withdraw as counsel, on August 17, 2021, the chancery court entered an order releasing the estate attorneys from any further representation or responsibilities in the estate matter and appointed Mark E. Norton, the Lamar County Probate Administrator, "as the attorney for the estate to conclude the estate requirements necessary to close the estate."[2]

¶4.    On August 19, 2021, Allen filed a pro se "Petition to Freeze the Estate of Eric Avery."

---

[2] The order was unclear as to whether the chancery court intended Norton to serve only as the attorney for the estate or to conclude the administration of the estate, instead of Allen, or both.  The chancery court's intentions were clarified in a subsequent order of the court entered on October 18, 2021, and discussed further in this opinion.

In his petition, Allen claimed that all the assets of the estate should be frozen until his father's death certificate could be amended and his sister Janice either be convicted or exonerated for her participation in Avery's death. Allen claimed that his father's death certificate should be amended to list additional factors that contributed to his cause of death, including COVID-19 and asbestos exposure. Allen also claimed that Janice played a role in their father's death by failing to provide him with ventilation treatments[3] during the period leading up to his death. Allen argued that because her actions contributed to Avery's death, she should not be allowed to inherit from his estate. In an order dated October 18, 2021, the chancery court clarified the previous order dated August 17, 2021, and stated in part:

> The intention of the Order allowing Withdrawal of Attorney [Doc. 24] dated August 17, 2021, was to appoint the Lamar County Probate Administrator, Mark E. Norton, Esq., as the Administrator of the Estate of Eric L. Avery for the purpose of concluding the estate. . . . [T]hat Allen Wayne Avery is removed as the Administrator of the Estate of Eric L. Avery, and Mark E. Norton, Esq. is substituted as the successor Administrator of the Estate of Eric L. Avery, effective August 17, 2021.[4]

Further, the order held that "[t]he matters raised in the pro se Petition to Freeze the Estate of Eric Avery are held in abeyance and may be raised again at a later date." Allen filed two subsequent pro se petitions to either remove Norton as the executor of Avery's estate or, in the alternative, to direct him to perform specific duties in furtherance of amending Avery's death certificate. In an order dated November 22, 2021, the chancery court denied Allen's "Petition for Removal or Direct to Perform Duty of Probate Attorney" because "the

---

[3] The ventilation device is referred to as a Trilogy machine throughout the record.

[4] Norton signed an oath of executor on November 10, 2021, and proceeded to close Avery's estate in accordance with his last will and testament.

Petitioner ha[d] failed to show good cause for the removal of Mark Norton as Executor of the Estate of Eric Avery."

¶5. On December 30, 2021, Norton filed an amended motion to approve the annual accounting, close the estate, and discharge the executor of Avery's estate. After a hearing on February 3, 2022, with Janice participating by Zoom conferencing and all the other interested parties participating in person, the chancery court granted Norton's motion. An order approving the first and final accounting, closing the estate, and discharging the executor was entered on February 3, 2022. Allen filed his pro se notice of appeal on February 22, 2022.

## STANDARD OF REVIEW

¶6. "This Court employs a limited standard of review on appeals from chancery court." *In re Est. of Baumgardner*, 82 So. 3d 592, 598 (¶15) (Miss. 2012).

> [T]his Court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, [or his findings were clearly erroneous[,] or [he] applied an erroneous legal standard."

*Id*. (quoting *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 13-14 (¶17) (Miss. 2007)). "Questions of law are reviewed de novo." *Id*. (citing *Corp. Mgmt. Inc. v. Greene County*, 23 So. 3d 454, 459 (¶11) (Miss. 2009)).

## ANALYSIS

¶7. Allen's arguments on appeal mirror two of his primary arguments throughout the probate proceedings in chancery court, namely that Avery's estate should not have been closed (1) before his death certificate was amended to reflect additional information

4

regarding the cause of death and (2) before a determination of Janice's alleged culpability in Avery's death.

## I.    Amendment of Death Certificate

¶8.    Allen argues that the chancery court should have required Avery's death certificate to be amended to reflect additional causes of death before closing the estate. The amendment of a death certificate is governed by Mississippi Code Annotated section 41-57-13(1) (Rev. 2018) and states in part:

> Death certificate errors in the recording of personal information of the deceased may be corrected by affidavit of the informant and the funeral director of the funeral home that disposed of the body. Items in the medical certification or of a medical nature may be amended upon receipt of the specified amendment form from (a) the person originally certifying the information or, if deceased or incapacitated, from the person responsible for the completion of such items, or (b) the State Medical Examiner. **All other amendments to a death certificate require adjudication by a chancery court in the county of residence of the complainant or in any chancery court district in the state if the complainant is a nonresident. In all such proceedings, the State Department of Health, the State Medical Examiner and the county medical examiner or county medical examiner investigator who certified the information shall be made defendants.** No death certificate shall be changed or amended by the State Medical Examiner or any county medical examiner or county medical examiner investigator after he has resigned or been removed from his office as the State Medical Examiner, county medical examiner or county medical examiner investigator.

(Emphasis added).

¶9.    Allen testified that if Avery's death certificate was amended to show COVID-19 as a contributing cause of death, the estate would be eligible to receive federal funding to reimburse funeral expenses. According to Allen, Avery was diagnosed with COVID-19 on January 18, 2020, over one year before his death; however, Allen contends that it was a

5

contributing factor to Avery's death. Norton testified that he did not believe that the expense of having the death certificate amended would be of any benefit to the estate and therefore he was not going to pursue an amendment as executor of the estate. There was no medical evidence that Avery's death was related to COVID-19. Allen did not file any independent pleadings giving notice to the necessary parties, as required by section 41-57-13, in an effort to amend Avery's death certificate. In response to Allen's desire to pursue the death-certificate amendment, the final order approving the request to close the estate provided in part:

> That the Certificate of Death of Eric L. Avery does not list COVID-19 as a cause of death, but Allen Wayne Avery believes that COVID-19 should be listed a cause of death on the Certificate of Death for the purposes of pursuing reimbursement of funeral expenses. That Janice Marie Avery Carson waives any claim for reimbursement of funeral expenses previously paid. That Allen Wayne Avery shall be entitled to proceeds received related to reimbursement of funeral expenses and shall be responsible for all expenses incurred related thereto.

Because amending death certificates is governed by section 41-57-13, and the procedure required under that statute was not followed in this case, the chancery court did not have jurisdiction to rule on Allen's request to amend Avery's death certificate. The chancellor made a provision in the closing order for Allen to receive the benefits should he choose to follow the statutory procedure to amend the death certificate in this regard. The chancery court did not err in closing the estate without proceeding on Allen's request to amend Avery's death certificate.

## II. Janice's Alleged Culpability in Avery's Death

¶10. Allen alleges that the chancery court erred in closing Avery's estate and distributing

6

the estate assets before a determination was made as to whether Janice's actions contributed to Avery's death. Allen argues that pursuant to Mississippi Code Annotated section 91-1-25 (Rev. 2021) and section 91-5-33 (Rev. 2021), Janice is precluded from inheriting from Avery's estate if it is determined that she caused his death.

¶11.    Mississippi Code Annotated section 91-1-25 states that "[i]f any person **wilfully** cause or procure the death of another in any way, **he shall not inherit** the property, real or personal, of such other; but the same shall descend as if the person so causing or procuring the death had predeceased the person whose death he perpetrated." (Emphasis added). Further, Mississippi Code Annotated section 91-5-33 states in part "[i]f any person shall **wilfully** cause or procure the death of another in any manner, he shall not take the property, or any part thereof, real or personal, of such other **under any will**, testament, or codicil." (Emphasis added). Both statutes require proof of willful action on the part of the accused to cause death.[5]

¶12.    In *Estate of Armstrong v. Armstrong*, 170 So. 3d 510, 513, 517 (¶¶12-13, 25) (Miss. 2015), the Mississippi Supreme Court explained:

> If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction. . . . The key word in this statute is "wilfully." In the criminal context, this Court has addressed the meaning of "wilfully," finding that it is synonymous with "knowingly" and "intentionally." The Court has held that terms "willfully" and "knowingly" have substantially the same meaning in criminal statutes. . . . [T]he Slayer Statute requires a finding of willful conduct in order to preclude a person from inheriting from his or her victim. . . .

---

[5] Mississippi Code Annotated sections 91-1-25 and 91-5-33 are also referred to as "Slayer Statutes."

In *Hood v. Vandevender*, 661 So. 2d 198, 201 (Miss. 1995), the supreme court held that a manslaughter conviction alone was not conclusive on whether a guilty party may inherit because "there are several manslaughter statutes in the state, some of which do not require willfulness." Despite an individual's conviction for another's death, more is required to prohibit inheritance from the deceased's estate. "While this result is grounded in legal precedent, it may prove to be unsettling to some. However, it is not the duty of this Court to determine public policy. If the law as it now exists is in need of change, that task is for the legislature." *Estate of Armstrong*, 170 So. 3d at 517 (¶24).

¶13. In this case, Allen testified that Janice failed to provide Avery with his prescribed ventilation treatments during the days leading up to his death in February 2021. Janice participated in the court proceedings via Zoom, and the chancellor questioned her about Allen's accusations as follows:

> THE COURT: [H]ave you been investigated for any mistreatment of your father in any way or contributed to his death? . . . There's been some assertion by your brother that you either contributed to or caused your father's death. What would be your response to that?
>
> MS. CARSON: Well, that's ridiculous. You know, I let my dad pretty much do what he wanted to do. He did not want to use the Trilogy machine. We tried it. He didn't like it. He didn't want to use it.
>
> THE COURT: Are you being investigated by any state agency or by any law enforcement for negligence or anything along those lines?
>
> MS. CARSON: No, ma'am.

There was no evidence presented at the hearing to substantiate Allen's claims that Janice's

actions contributed to Avery's death. Avery's death certificate stated that his cause of death was "malignant neoplasm of upper lobe of left lung." Nothing on Avery's death certificate suggested that his death was a result of homicide. Allen did not produce any other medical records or autopsy reports in furtherance of his claims of homicide. Allen produced no proof that there was a pending criminal charge against Janice or that there was an ongoing criminal investigation into Avery's death. In any event, even if Janice's actions were found to have caused Avery's death, there was no evidence presented that she acted to willfully, knowingly, or intentionally kill her father. *See id*. at 513-14 (¶13). Therefore, the chancery court did not err in closing Avery's estate and distributing his assets in accordance with his last will and testament.

## CONCLUSION

¶14.    After reviewing the record, we find that the chancery court did not err in closing Avery's estate, distributing estate assets, and discharging the executor.

¶15.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**