# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-SA-00977-COA

**MORTISCHA HICKS**                                                     **APPELLANT**

**v.**

**PUBLIC EMPLOYEES' RETIREMENT**                              **APPELLEE**
**SYSTEMS OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/14/2018 |
| TRIAL JUDGE: | HON. JOSEPH ANTHONY SCLAFANI |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | ORVIS A. SHIYOU JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: S. MARTIN MILLETTE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 10/01/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McDONALD AND C. WILSON, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     This case presents the question of whether the husband of a deceased Public Employees' Retirement System (PERS) member is entitled to receive lifetime spousal survivor benefits notwithstanding the fact that he was convicted of aggravated driving under the influence (DUI) in connection with her death. We find the decision of the PERS Board of Trustees (Board) that the husband is entitled to such benefits is proper and affirm.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     On May 24, 2014, Megan Hicks, a vested member of PERS, died as a result of a vehicular accident where her husband, Jeremy Earnest, was driving while intoxicated and

she was a passenger. After being notified of Megan's death, PERS staff researched Megan's account to determine if she was married or had dependent children. Megan had listed on a beneficiary-designation form her husband, Jeremy, as a forty-percent beneficiary, and her sister, Mortischa Hicks (Hicks), as a sixty-percent beneficiary, in the event a refund of accumulated contributions and interest were payable upon Megan's death. Megan and Jeremy also had been married for more than one year prior to her death; therefore, PERS determined that Jeremy was entitled to statutory survivor benefits regardless of Megan's beneficiary designations.

¶3.     In June 2014, PERS notified Jeremy of his right to lifetime spousal survivor benefits. PERS received Jeremy's pre-application for survivor benefits form. During the application process, however, PERS was notified that Jeremy had been criminally charged in connection with Megan's death. PERS therefore placed a hold on the payment of survivor benefits until the charges were resolved.

¶4.     In September 2014, Jeremy was indicted in Copiah County, Mississippi, for "unlawfully and feloniously, while operating a motor vehicle in a negligent manner, caus[ing] the death of Megan . . . at a time when . . . Jeremy . . . was operating his vehicle under the influence of intoxicating liquor" in violation of Mississippi Code Annotated section 63-11-30(1) and (5) (Rev. 2013).[1] Jeremy pleaded guilty to the charge and was

---

[1] In its final administrative determination letter, PERS notes that the crime, now entitled "Aggravated DUI," is also commonly referred to as "DUI manslaughter"; however, the statute itself does not use the term "manslaughter."

sentenced to twenty-five years in the custody of the Mississippi Department of Corrections, with fifteen years to serve and ten years suspended. PERS determined, however, that Jeremy's conviction did not preclude him from receiving surviving spouse benefits; thus, in May 2015, he began receiving monthly survivor retirement benefits in the amount of $388.56.[2]

¶5. Two years later, in May 2017, PERS received a letter from an attorney representing Hicks requesting "the requisite documents to file for death benefits provided under [Megan's] account with PERS." Also requested was an inquiry into "the plan provision" regarding Megan's death and benefit payment to Jeremy after his conviction. Pat Robertson, the executive director of PERS, responded by a letter dated June 2, 2017, informing Hicks's counsel that under Mississippi Code Annotated section 25-11-103(1)(g) and section 25-11-114(2)(a) (Rev. 2018) that

> the surviving spouse of a vested member who dies before retirement shall receive a lifetime monthly benefit, *regardless of the named beneficiary on file*, if the surviving spouse and deceased member have been married for at least one year and the surviving spouse has not signed a written waiver of benefits. In other words, PERS only pays to the named . . . beneficiaries on file when there is no statutory beneficiary entitled to benefits.

(Emphasis added). The letter noted that an acknowledgment of this rule was in the beneficiary designation form Megan signed. Robertson also added that PERS follows the public policy established in Mississippi Code Annotated sections 91-1-25 and 91-5-33,

---

[2] Jeremy also received a check for retroactive benefits from June 2014 through May 2015.

3

"which states that any person who willfully causes or procures the death of another shall not inherit from the person killed." However, Robertson stated that because Jeremy was convicted under the aggravated-DUI statute, which "is a crime of negligence and does not require willful intent to cause death," Jeremy would not be "automatically prohibited from inheriting from [Megan] under Mississippi law."

¶6. In response, Hicks's counsel sent a letter to PERS on August 11, 2017, stating plans "to seek recovery of all funds held by Megan at the time of her death" in the Chancery Court of Jefferson Davis County, Mississippi, where Megan's estate action was pending. Robertson sent a final administrative determination letter on August 25, 2017, to Hicks based on her standing as a named beneficiary on Megan's PERS account. The letter explained the same information as the June 2, 2017 letter to Megan's attorney, also noting that "PERS accounts and benefits do not become part of a deceased member's estate"; therefore, the chancery court did not have jurisdiction over the matter. PERS concluded that since there was no evidence that Jeremy willfully intended to cause Megan's death, he was not precluded by law from receiving spousal survival benefits. And further, Hicks was not due a refund of accumulated contributions.

¶7. Hicks filed a notice of appeal requesting a hearing before the Claims Committee of the PERS Board. At the hearing, counsel for Hicks introduced an order issued by the Jefferson Davis County Chancery Court establishing heirs, as Megan died intestate. In the order, the chancellor found Jeremy was not entitled to receive any benefits from Megan's

4

estate because he was responsible for her death. Hicks's counsel acknowledged that this order was not binding on PERS, but he argued Jeremy should not be allowed to receive survivor benefits because he "voluntarily" drove his vehicle at a high rate of speed while intoxicated, which resulted in his wife's death.

¶8. The Claims Committee was not persuaded, however, and recommended to the PERS Board to affirm the administrative decision of the PERS executive director denying Hicks's claim. Hicks then appealed to the Hinds County Circuit Court. In June 2018, that court affirmed the PERS Board's decision denying Hicks's requests that Jeremy be disqualified as a beneficiary of Megan's PERS account, and that Hicks be named as a beneficiary and paid a refund of accumulated contributions and interest. Hicks timely appealed to this Court.

## STANDARD OF REVIEW

¶9. Review of an administrative agency decision of the PERS Board is limited. Rule 5.03 of the Uniform Civil Rules of Circuit and County Court Practice provides that the reviewing court will not disturb the agency's decision unless the judgment was (1) unsupported by substantial evidence; (2) arbitrary and capricious; (3) beyond the power of the agency; or (4) violated the complainant's statutory or constitutional right. *Pub. Emps. Ret. Sys. v. Dishmon*, 797 So. 2d 888, 891 (¶8) (Miss. 2001). Further, "[t]here is a rebuttable presumption in favor of a PERS ruling. Neither this Court nor the circuit court is entitled to substitute its own judgment for that of PERS, and it is impermissible for a reviewing court to re-weigh the facts of the case." *Id.* at (¶9) (citation omitted). The focus for the court's

5

review is whether the agency's decision is supported by substantial evidence or is arbitrary and capricious. *Id.* Questions of law are reviewed de novo. *Oktibbeha Cty. Hosp. v. Miss. State Dept. of Health*, 956 So. 2d 207, 208-09 (¶5) (Miss. 2007).

## ANALYSIS

¶10.    Hicks presents her argument as a conflict of statutes. PERS advocates application of Mississippi Code Annotated section 25-11-117(1) (Rev. 2018), which provides for the distribution of accumulated contributions upon the death of a member prior to retirement:

> In the event of death before retirement of any member whose spouse and/or children are not entitled to a retirement allowance, the accumulated contributions to the credit of the deceased member in the annuity savings account shall be paid to the designated beneficiary on file in writing in the office of the executive director of the board of trustees . . . .

Hicks, however, argues that Mississippi Code Annotated sections 91-1-25 and 91-5-33 (Rev. 2018), known as the "slayer statutes," control. *See Estate of Armstrong v. Armstrong*, 170 So. 3d 510, 513 (¶10) (Miss. 2015). These two code sections prohibit inheritance by a individual who "willfully" causes the death of another individual. Under the laws of descent and distribution, section 91-1-25 provides that "[i]f any person wilfully cause or procure the death of another in any way, he shall not inherit the property, real or personal, of such other; but the same shall descend as if the person so causing or procuring the death had predeceased the person whose death he perpetrated." Likewise, if the decedent has a will, section 91-5-33 provides the same prohibition. The plain language of sections 91-1-25 and 91-5-33 does not apply to PERS benefits because these benefits pass outside the

6

decedent's estate. However, for public policy reasons, the Mississippi Supreme Court has applied the same statutory principles where the property at issue was life insurance proceeds rather than an inheritance. *See Gholson v. Smith*, 210 Miss. 28, 30, 48 So. 2d 603, 604 (Miss. 1950) (In an interpleader action by an insurance company, the widow did not receive the husband's life insurance proceeds because she deliberately killed him.); *see, e.g.*, *Old Line Life Ins. Co. v. Brooks*, No. 3:05-cv-722-DPJ-JCS, 2007 WL 892448, at *2 (S.D. Miss. Mar. 22, 2007) (In an interpleader action, the sons were listed as beneficiaries on their father's life insurance policy and were ineligible to collect proceeds because they murdered their father.); *Dill v. S. Farm Bureau Life Ins. Co.*, 797 So. 2d 858, 866 (¶43) (Miss. 2001) (In an interpleader action, the husband was not entitled to wife's life insurance proceeds because he intentionally killed her.). We find that PERS correctly determined the same principles would apply to PERS benefits for the strong public policy against allowing someone to profit from involvement in the death of another.

¶11. Under section 25-11-114(2)(a)(ii), when a vested PERS member who has been married for at least one year dies prior to retirement and the surviving spouse has not previously signed a written waiver of benefits, the surviving spouse shall receive a lifetime monthly benefit regardless of the designated beneficiary on file with PERS. Accordingly, even though Megan's beneficiary designation form listed her husband as a forty-percent beneficiary and Hicks as a sixty-percent beneficiary, by law PERS can only pay a refund of accumulated contributions to the designated beneficiary when there is no spouse or

7

dependent children entitled to the monthly benefits. PERS could only pay a refund of contributions to Hicks as a named beneficiary if Jeremy was not entitled to statutory survivor benefits. When Megan died, there was no waiver of spousal benefits on file with PERS. Therefore, Jeremy, married to Megan for over one year, was entitled to lifetime spousal benefits unless disqualified.

¶12. A person may be disqualified from receiving benefits under the slayer statutes cited earlier. However, as PERS points out, these statutes are "strictly construed and narrow in purpose." *Estate of Armstrong*, 170 So. 3d at 514 (¶16). Hicks argues that the slayer statutes apply; thus, Jeremy should be disqualified from receiving Megan's benefits because he "willfully" caused her death when he "willfully" drove a vehicle that he knew, or should have known, he was incapable of operating safely because he was intoxicated. Hicks claims that Jeremy was indicted for a crime which included an element of "willfulness" and not a crime of negligence; however, Jeremy was allegedly allowed to plead guilty to a lesser crime based on negligence to avoid trial and to receive a lighter sentence.

¶13. Hicks's argument is off-base. While Jeremy's guilty plea is not a part of the record, his indictment and sentencing order are. Jeremy was not indicted for a different crime from which he pleaded guilty; he was indicted "for the offense of vehicular homicide" under Mississippi Code Annotated sections 63-11-30(1) and -30(5) for causing Megan's death while "operating a motor vehicle in a *negligent* manner." (Emphasis added). This crime carries a maximum sentence of twenty-five years. The sentencing order states Jeremy

8

pleaded guilty to the charge of "DUI manslaughter" and sentenced him to twenty-five years with fifteen years to serve. As stated earlier, "aggravated DUI" is commonly referred to as "DUI manslaughter." Further, this type of homicide is not a crime of willfulness but one of negligence, as is apparent from the plain language of the statute.

¶14. In Mississippi, there have been no appellate cases that specifically discuss whether a person convicted under the DUI statute for killing an individual is prohibited from inheriting from the deceased. The PERS administrative decision letter, the Claims Committee recommendation, and the circuit court's decision all cite to *Hood v. Vandevender*, 661 So. 2d 198 (Miss. 1995). In that case, the Mississippi Supreme Court held that a conviction for manslaughter would not prevent the defendant from inheriting from the decedent under sections 91-1-25 and 91-5-33 because such a conviction is "only slight evidence of willfulness, and evidence only that a killing occurred." *Hood*, 661 So. 2d at 201. The court further noted that the burden of proving the applicability of the slayer statutes is on the estate. *Id.* We cannot say PERS erred in relying on *Hood* to deny Hicks's claim.[3] Under the proper legal standard, Jeremy did not willfully cause Megan's death by choosing to drive while intoxicated.

¶15. Hicks also argues that, as a matter of public policy, Jeremy should not benefit financially from causing the death of his wife, regardless of whether she was killed by a willful or negligent action. Unfortunately, while Jeremy's actions resulted in a senseless

---

[3] Hicks argues that *Hood* is distinguishable but does not elaborate further.

9

tragedy, neither PERS nor this Court has the authority to analyze the public policy of this State; we must comply with the governing statutes when determining how survivor benefits are paid. Under the current law, PERS cannot deny Jeremy statutory survivor benefits unless sufficient evidence is presented that he willfully caused Megan's death. Because the law requires willful intent, and Hicks presented no evidence of such, we cannot say the Board erred in denying Hicks's claim.

¶16.    Accordingly, we affirm the Board's decision.

¶17.    **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR. LAWRENCE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.**

**LAWRENCE, J., SPECIALLY CONCURRING:**

¶18.    As the law currently stands, Jeremy Earnest is entitled to his late wife's PERS benefits, regardless of the fact that he caused her death. Mississippi's "slayer statute" only prohibits a person from inheriting benefits or property of a person if the slayer "willfully" caused that person's death. *See* Miss. Code Ann. § 91-1-25(6) (Rev. 2018). While I agree with the majority's interpretation of the statute and our supreme court precedent when applied to the facts of this case, I write separately to express my concerns with this outcome under our current law.

¶19.    Driving under the influence and causing a death is considered a crime of violence under Mississippi law. Miss. Code Ann. § 97-3-2 (Rev. 2014). The "willful" element

required by Mississippi's slayer statute is not included in Mississippi Code Annotated section 63-11-30(5) (Rev. 2013), nor was it in the indictment in this case. In her appeal to the trial court, Mortischa Hicks asserted that Jeremy's actions "warrant a finding that he did 'willfully' cause the death of Mrs. Earnest in that he willfully ingested alcohol and drove a vehicle at a time that he knew or should have known he was incapable of safely operating that automobile." This Court has held before, and juries are regularly instructed, that "voluntary intoxication does not negate criminal responsibility." *Lawrence v. State*, 3 So. 3d 754, 758 (¶20) (Miss. Ct. App. 2008) (citing *McDaniel v. State*, 356 So. 2d 1151, 1161 (Miss. 1978)). No one poured alcohol into Jeremy's mouth. He voluntarily decided to drink and drive. Black's Law Dictionary defines "willful" as "**[v]oluntary** and intentional, but not necessarily malicious." Black's Law Dictionary 1834 (10th ed. 2014) (emphasis added). Because our law mandates that one who voluntary ingests alcohol is responsible for their criminal actions, and Black's Law Dictionary defines willful as voluntary, I agree with Hicks's logic. It would not be a stretch to hold that our law implicitly demands that when a person willfully or voluntarily ingests alcohol and then negligently causes the death of another, that under our slayer statute the person's acts be construed as willful. However, that is not the present state of our law.

¶20.    Mississippi's slayer statute adds the specific element of willfulness. As the law currently reads, even though it is plausible that Jeremy willfully chose to drink and drive, he did not willfully cause Megan's death in terms of the statute. As a result, Jeremy is able

to recover lifetime spousal survivor benefits of $338.56 each month, instead of the victim's family. There can be no doubt that a person who drinks and drives endangers themselves, any passengers in the car, and those on the road. Jeremy's decision to willfully drink and drive not only put himself in danger, but his act caused the death of his wife, Megan. But for his choice, the car would not have crashed, and Megan would not have died. To be clear, Jeremy's ability to collect the benefits under this technicality allows him to benefit from a death he caused and for which he is presently serving a prison sentence. Unfortunately, instead of the decedent's family (who were named as a sixty-percent beneficiary originally) collecting the benefits, the man who caused her death by violating the laws of this state will receive those benefits while he is in prison for causing her death. That strikes me as wrong and law without common sense.

¶21. Some states have prevented such an outrageous result by simply altering the statutory language or having different language in their slayer statutes. In particular, Alaska's statute is instructive. Under Alaskan law, "an individual who **feloniously** kills the decedent forfeits all benefits . . . ." Alaska Stat. Ann. § 13.12.803 (emphasis added). That statute purposefully omits any language of willfulness, and encompasses both intentional and unintentional acts. Furthermore, it only requires that the action be felonious and that the felonious act cause a death. If Mississippi's slayer statute had that language, then Jeremy would not be able to profit from his acts in criminally causing his wife's death.

¶22. If Mississippi Code Annotated section 63-11-30(5), which governs the operation of

a motor vehicle while under the influence of alcohol, had included the words "willful" or "voluntary" impairment that negligently caused a death, the result in this case may have been different. Or, if the slayer statute had eliminated the word willful and only required a felonious killing, the result in this case may have been different. The legislature makes the law, not this Court. This Court is duty bound to follow the law of this state as established by the legislature. Therefore, I regrettably concur with the majority and find that, unfortunately, Jeremy is entitled to Megan's benefits under the present state of our law.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**